J-A23006-18

2019 PA Super 18

IN RE: C.M.K., A MINOR       :     IN THE SUPERIOR COURT OF
                                            :            PENNSYLVANIA
                                            :

APPEAL OF: ALLEGHENY COUNTY   :
OFFICE OF CHILDREN AND YOUTH   :
AND FAMILIES                             :
                                            :
                                            :
                                            :       No. 402 WDA 2018

Appeal from the Order Entered February 16, 2018
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  CP-02-AP-0000009-2016

BEFORE:  BOWES, J., SHOGAN, J., and STABILE, J.

OPINION BY BOWES, J.:                         **FILED JANUARY 24, 2019**

The Allegheny County Office of Children, Youth, and Families ("CYF" or "Agency") appeals from the orphans' court's February 16, 2018 order denying CYF's petition to involuntarily terminate the parental rights of J.K.-T. ("Father") to his minor daughter, C.M.K.[1]  After careful review, we reverse the determination that grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2) had not been proven by clear and convincing evidence, vacate the order denying CYF's petition, and remand for further proceedings.

C.M.K. was born in August 2011.  The family has been known to CYF since February 2010 due to issues with substance abuse, domestic violence, and reports Mother was not able to properly and safely care for C.M.K.'s older half-sister, N.R.L.  C.M.K. was removed from Mother's care on June 28, 2014,

---

[1] That same day, the orphans' court terminated involuntarily the parental rights of K.C. ("Mother").  We address her appeal in a separate memorandum.

after the Allegheny County Office of Children, Youth, and Families ("CYF" or "Agency") received reports that Mother had left C.M.K. with an inappropriate caregiver and Father took C.M.K. and returned her to Mother the following day. After CYF was unable to contact Father, the agency obtained an emergency custody authorization for C.M.K. and her older sibling.

Following a shelter care hearing, C.M.K. was to be returned to Mother, but she remained in CYF's custody after both parents tested positive for alcohol after court. Following an adjudicatory hearing in July 2014, C.M.K. was returned to Mother; however, the child was again removed from Mother's care on August 19, 2014. C.M.K. and her half-sister were placed in the same pre-adoptive foster home, where they remain. The court adjudicated C.M.K. dependent on September 29, 2014. At the time, Father was incarcerated in the Allegheny County jail related to charges stemming from an assault on Mother. In order to be reunified with C.M.K., the court ordered Father to undergo treatment for drug and alcohol addiction, domestic violence, and anger management.

C.M.K. remained in placement until January 2016,[2] when CYF filed its first petitions seeking to involuntarily terminate Mother's and Father's parental rights. The court convened hearings on the petitions on May 13, 2016, and August 5, 2016. At the hearing, Eric Bernstein, Psy.D., a child psychologist who had performed evaluations of the family, and Veronica Shannon, a CYF

---

[2] Permanency review hearings were held in February 2015, May 2015, June 2015, August 2015, November 2015, February 2016, and August 2016.

caseworker, testified for CYF.  Mother and Father were both present and testified on their own behalves.  Additionally, Mother presented the testimony of Neil Rosenbloom, Ph.D., a psychologist who had evaluated the family; Julia Ofrichter, an outpatient therapist at Mercy Behavioral Health; Angela Terenzio, a social worker at Second Chance; and Karen Hadix, an outpatient therapist employed by Three Rivers Adoption Center.  C.M.K.'s counsel presented the testimony of Maggie Swartzfager, a therapist employed at the Youth Advocate Program, and Dawn R. Paul, an elementary school teacher. Following the hearing, the court denied both petitions on September 14, 2016.[3]

CYF re-filed its petitions seeking to involuntarily terminate the parental rights of Mother and Father on February 6, 2017.  The court convened hearings on the petitions on October 27, 2017, October 31, 2017, and January 23, 2018.[4]  Additionally, it admitted into evidence transcripts of the prior termination hearings.  On February 16, 2018, the orphans' court entered an order denying CYF's petition as to Father, finding that CYF had not proved by

---

[3] CYF appealed the denial of its termination petition to this Court, but withdrew its appeal on January 10, 2017.  **See** 1489 WDA 2016.  However, the concomitant appeals docketed at 1486 WDA 2016 and 1487 WDA 2016 were not withdrawn, and this Court affirmed the orphans' court's finding that CYF did not make reasonable efforts to finalize the permanency plan for C.M.K. **See In re C.K.**, 165 A.3d 935 (Pa.Super. 2017).

[4] Attorney Rebecca Heaton Hall represented the legal interest of C.M.K.  **See In re T.S.**, 192 A.3d 1080, 1082 (Pa. 2018) (reiterating, in contested termination of parental rights proceedings, 23 Pa.C.S. § 2313(a) requires appointment of counsel to represent child's legal interests, *i.e.*, child's preferred outcome).

clear and convincing evidence that grounds for termination existed as to Father under § 2511(a)(2). Specifically, focusing solely on Father's history of domestic violence, the court determined,

> CYF's evidence again fell short of establishing that Father cannot or will not remedy this concern. The record does not show that there is an ongoing concern about Father engaging in domestic violence. There is no evidence that Father has engaged in domestic violence outside of the incident with Mother in 2014. The record also does not show that Father does not appreciate the importance of addressing how prior domestic violence has affected the Child. Father is currently participating in family therapy to address this issue. The only evidence CYF presented to establish that Father cannot or will not remedy this concern is a single frustrated conversation Father had with the CYF worker. The evaluator did not explore Father's understanding of the need to address how prior domestic violence may have affected the Child. The evaluator was also unable to conclude that the relationship between Father and the Child could not be repaired. Consequently, the Court finds the evidence insufficient to establish, clearly and convincingly, that Father "cannot or will not" remedy the "conditions and causes" of his "incapacity" as a parent.

Trial Court Opinion,5/14/18, at 7-8 (footnote omitted).

Since the court framed the issue of domestic violence as "the critical issue that needed to be addressed," it discounted the remaining conditions, including the role that Father's substance abuse played in his continuing incapacity to perform parental duties. Based upon its §2511(a) determination, the court did not make any findings under § 2511(b).

On March 20, 2018, CYF filed a notice of appeal along with a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The agency raises two issues for our review:

I. Did the orphans' court err as a matter of law and/or abuse its discretion in denying CYF's petition to involuntarily terminate Father's parental rights pursuant to 23 [Pa.C.S. § 2511(a)(2)] when CYF proved by clear and convincing evidence that grounds for termination existed?

II. Did the orphans' court err as a matter of law and/or abuse its discretion by failing to address what would best serve [C.M.K.'s] needs and welfare pursuant to 23 [Pa.C.S. § 2511(b)] by clear and convincing evidence?

CYF's brief at 5.

We review cases involving the termination of parental rights according to the following standards.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (internal citations and quotations omitted).

> Termination requires a bifurcated analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests

of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted).

As CYF argues that it proved by clear and convincing evidence that grounds for termination existed under 23 Pa.C.S. § 2511(a)(2), we focus our analysis on subsection (a)(2) and (b). Those subsections provide:

> **(a)** **General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . . .
>
> **(b) Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2) and (b).

To satisfy the requirements of § 2511(a)(2), the moving party must prove "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." **In Interest of Lilley**, 719 A.2d 327, 330 (Pa.Super. 1998). The grounds for termination are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied. **In re Z.P.**, 994 A.2d 1108, 1117 (Pa.Super. 2010). Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties. **Id.**

Here, CYF argues that Father's inconsistency and inability to fully comply with his family service plan, drug screening, and family therapy amount to a parental incapacity that cannot be remedied. CYF's brief at 28-29. As noted *supra*, we examine the orphans' court's decisions for an error of law or abuse of discretion, and whether the findings of fact are supported by the record. **T.S.M.**, *supra* at 267. We are constrained to conclude that they are not. Rather, the record establishes the following facts.

C.M.K., who is seven years old, has been in care for over four years. As a result of the turbulence of her upbringing, including the domestic violence she witnessed, she has numerous behavioral issues, including violent outbursts. During that time, Father was ordered to participate in treatment for drug and alcohol addiction and to submit to random screenings, to participate in treatment and therapy for domestic violence and anger

- 7 -

management, and to regularly visit with C.M.K. From February 2015 through November 2015, the court's orders reflected that Father was in "moderate" compliance. In February 2016 and August 2016, the court found that Father was in substantial compliance. However, these conclusions are not supported by the record.

With regard to Father's drug requirements, he was not in compliance. He tested positive for cocaine in October 2016, and his visits were changed to supervised. *See* Permanency Review Order, 1/24/17, at 1-4. Rather than accepting responsibility for the result, Father gave an excuse that he "must have been exposed" to cocaine while attempting to remove the drug from his brother's apartment. *See* N.T., 10/31/17, at 38. Father was supposed to attend drug screens and was indeed called for sixteen drug screens by his caseworker, but attended only thirteen of them. *See* Permanency Review Order, 8/2/17, at 1-4. When questioned about this failure, Father again gave excuses, stating that he was not aware of the requested screens or his caseworker's attempts to contact him at both Father's telephone number and his girlfriend's phone number. *Id*. This failure is reflected in the juvenile court's January 2017 permanency review order identifying Father's noncompliance by noting that Father missed screens on October 18, 2016, November 2, 2016, and December 14, 2016. Furthermore, in August 2017, Father posted a video on Facebook in which Father appeared intoxicated and was slurring his words. *See* Permanency Review Order, 8/2/17, at 1-4. Most telling, during the November 2017 permanency review hearing that was held

in the midst of the instant termination proceedings, the court found Father was in **minimal** compliance, and had still not attended drug screens. ***See*** Permanency Review Order, 11/8/17, at 1-4. Hence, the certified record belies the court's present finding that Father complied with his court-ordered FSP goals.

Likewise, the record will not sustain the trial court's characterization of Father's compliance with family therapy. It is important to note that Father was required to attend counseling with C.M.K. to address the trauma she had undergone after witnessing Father commit acts of domestic violence against Mother. Father admitted that he had committed acts of domestic violence against Mother, acknowledged the extent of her injuries, and acknowledged that both N.R.L. and C.M.K. had likely witnessed the violence. N.T., 1/23/18, at 87-88. Father was slow to initiate family therapy. He attended the intake interview in June 2016 and one session with both children. Permanency Review Order, 8/3/16, at 1-6. Following those early appointments Father did not call immediately to schedule additional sessions, nor was the caseworker able to reach him regarding arrangements. Father claimed that he had not received any messages about additional appointments until January 2017. Permanency Review Order, 1/24/17, at 1-4. By April 2017, Father's participation in family therapy was inconsistent at best. He attended two individual sessions, but failed to attend any sessions with the children. Permanency Review Order, 4/19/17, at 1-4. He missed an appointment in May 2017 and did not call to reschedule, per the court's order. Permanency

Review Order, 8/2/17, at 1-4. As noted *infra*, during the November 2017 permanency hearings that occurred parallel with the termination proceedings, the court determined that Father had not attended family therapy consistently. Permanency Review Order, 11/8/17, at 1-4. Following that review hearing, Father attended eleven individual therapy sessions, but none of those sessions included C.M.K. Most concerning is the fact that Father stated to the caseworker that he would not attend sessions with his daughter and did not understand why that aspect of therapy necessary. **See** N.T., 4/19/17, at 59.

Accordingly, contrary to the trial court's findings, the certified record established both that Father was not in substantial compliance with his court-ordered goals and that he neglected to remedy the causes leading to the parenting incapacity. Stated plainly, the trial court erred by refusing to consider the full record, including more recent evidence to show that Father still refused to remedy the causes of the incapacity and had not remedied the incapacity in the four years that C.M.K. was in care. **Z.P.**, **supra** at 1117. As our Court recognized in **In re Adoption of R.J.S.**, 901 A.2d 502, 513 (Pa.Super. 2006),

> the statute implicitly recognizes that a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future.

As the certified record confirms that the causes of Father's parenting incapacity persist approximately three and one-half years after the adjudication of his daughter's dependency, the orphans' court erred in finding that clear and convincing evidence did not establish grounds for termination under § 2511(a)(2).

In light of our determination that CYF established grounds of termination under § 2511(a)(2), we must remand for the trial court to consider whether the needs and welfare of C.M.K. will be met by the termination of Father's parental rights pursuant to § 2511(b). In cases where the trial court has not made findings pursuant to § 2511 (b), we have ordered that:

> On remand, the court must carefully consider the tangible dimension, as well as the intangible dimension-the love, comfort, security, and closeness-entailed in a parent-child relationship. The court must consider whether a bond exists between Child and Father, and whether termination would destroy an existing, necessary and beneficial relationship.

*In re B., N.M.*, 856 A.2d 847, 859 (Pa.Super. 2004) (internal citations omitted).

In consideration of § 2511(b), we instruct the trial court to carefully consider the certified record mindful of the foregoing principles and to determine whether the termination of parental rights would best serve the developmental, physical and emotional needs and welfare of the child, including C.M.K.'s relationship with Father as well as her safety needs, the bond she shares with her half-sister and her relationships with the foster family, who provide for her emotional and physical well-being. *See In re*

- 11 -

***A.S.***, 11 A.3d 473, 483 (Pa.Super. 2010) ("the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent.").

Order vacated. Remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  1/24/2019