J-A03025-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: A.A., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: B.R., MOTHER | |
| | No. 1125 MDA 2020 |

Appeal from the Decree Entered August 18, 2020
In the Court of Common Pleas of York County Orphans' Court at No(s):
2020-0064a,
2020-0065a, 2020-0066a,
2020-0067a, CP-67-DP-0000390-2018,
CP-67-DP-0000391-2018, CP-67-DP-0000392-2018,
CP-67-DP-0000393-2018

| | |
|---|---|
| IN RE: Z.A.., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: B.R., MOTHER | |
| | No. 1126 MDA 2020 |

Appeal from the Decree Entered August 18, 2020
In the Court of Common Pleas of York County Orphans' Court at No(s):
2020-0064a,
2020-0065a, 2020-0066a,
2020-0067a

| | |
|---|---|
| IN RE: N.A., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: B.R., MOTHER | |
| | No. 1127 MDA 2020 |

Appeal from the Decree Entered August 18, 2020
In the Court of Common Pleas of York County Orphans' Court at No(s):
2020-0064a,
2020-0065a, 2020-0066a,
2020-0067a

| | | |
|---|---|---|
| IN RE: D.A., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: B.R., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1128 MDA 2020 |

Appeal from the Decree Entered August 18, 2020,
in the Court of Common Pleas of York County,
Orphans' Court at No(s):  2020-0064a,
2020-0065a, 2020-0066a,
2020-0067a.

| | | |
|---|---|---|
| IN THE INT. OF: N.A., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: B.R., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1154 MDA 2020 |

Appeal from the Order Entered August 14, 2020,
in the Court of Common Pleas of York County,
Juvenile Division at No(s):  CP-67-DP-0000390-2018.

| | | |
|---|---|---|
| IN THE INT. OF: D.A., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: B.R., MOTHER | : | |
| | : | |

- 2 -

J-A03025-21

: 
: 
: 
: 
:     No. 1155 MDA 2020

Appeal from the Decree Entered August 14, 2020,
in the Court of Common Pleas of York County,
Juvenile Division at No(s):  CP-67-DP-0000391-2018.


IN THE INT. OF: Z.A., A MINOR     :     IN THE SUPERIOR COURT OF
           :           PENNSYLVANIA
           :

APPEAL OF: B.R., MOTHER     :
           :
           :
           :
           :
           :     No. 1156 MDA 2020


Appeal from the Order Entered August 14, 2020,
in the Court of Common Pleas of York County,
Juvenile Division at No(s):  CP-67-DP-0000392-2018.


IN THE INT. OF: A.A., A MINOR     :     IN THE SUPERIOR COURT OF
           :           PENNSYLVANIA
           :

APPEAL OF: B.R.     :
           :
           :
           :
           :
           :     No. 1157 MDA 2020


Appeal from the Decree Entered August 14, 2020,
in the Court of Common Pleas of York County,
Juvenile Division at No(s):  CP-67-DP-0000393-2018.


BEFORE:  LAZARUS, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY KUNSELMAN, J.:           **FILED MARCH 12, 2021**

- 3 -

In this matter, B.R. (Mother) appeals the orphans' court decrees terminating her rights to 6-year-old A.A., 5-year-old Z.A., 3-year-old D.A., and 2-year-old N.A. (collectively, the Children), pursuant to the Adoption Act. *See* 23 Pa.C.S.A. § 2511(a)(5) and (8) and (b).[1]  Mother also challenges the decision of the dependency court to change the goal of the proceedings from reunification with Mother to adoption.  After careful review, we affirm the termination decrees and conclude the goal change issue is moot.

The relevant factual and procedural history may be summarized as follows:  The family came to the attention of the Office of York County Children, Youth and Families (Agency) in December 2018, after the parents were incarcerated for probation violations.  The Agency was also concerned the Children had not been receiving medical attention.  When the representative for the Agency arrived at the home, Children appeared dirty, bruised, and not appropriately dressed; moreover, the youngest – then only eight months old – was sleeping between two pillows with a blanket over her. The Children had no other family members who could be an appropriate placement resource.

The Agency obtained an emergency order for protective custody, and thereafter the juvenile court adjudicated the Children dependent on December

---

[1] The court also terminated the rights of D.A. (Father).  Father did not appeal the termination of his rights, although he did appeal the court's decision to change the dependency goal.  These appeals were quashed pursuant to our per curiam order of November 6, 2020. *See* 1216, 1217, 1218, and 1219 MDA 2020.

21, 2018. The court placed the Children in foster care, while listing the goal of the dependency proceedings as reunification with the parents. To achieve reunification, the court adopted several family service plans.

Over the course of the dependency case, the juvenile court determined Mother made minimal progress toward alleviating the conditions that led to the Children's removal. A significant barrier to reunification was Mother's mental health. In 2019, Mother submitted to a psychological evaluation by Dr. Jonathan M. Gransee. Mother had a childhood history of sexual and psychological abuse and neglect. She was diagnosed with post-traumatic stress disorder, adjustment disorder, antisocial behavior, and intermitted explosive disorder. Dr. Gransee recommended Mother treat her mental health issues, including anger management, in order to put herself in a position to care for the Children.

Mother would not successfully work with service providers. Pressley Ridge Intensive Family Service Team worked with Mother from February 2019 until October 2019, when it closed its case due to Mother's lack of consistent participation. Immediately thereafter, Catholic Charities Intensive Family Services Team opened a case with the family. But this service provider also ended its involvement with the family, after Mother missed appointments and failed to comply. While Mother did participate in therapy through TrueNorth Wellness, she declined recommended treatment and then withdrew from services. Mother also failed to achieve stable housing, moving four times in two years, and could not retain a lawful source of income.

Another concern was Mother's visitation with the Children. Prior to the COVID pandemic, Mother participated in weekly visits with the Children, but she never progressed to a point where the visits could be unsupervised. After March 2020, the visits mostly occurred virtually, twice per week; although during one in-person visit, which occurred outdoors on August 6, 2020, Mother became agitated. Mother attempted to smoke in front of the Children, but she was advised by the service provider that smoking was not appropriate. Mother became upset, threw down her cigarettes, said some profanity, and walked away.

The Agency ultimately petitioned the court to terminate Mother's rights. Following a hearing on August 13, 2020, the court terminated Mother's rights and changed the goal from reunification to adoption. Mother presents one issue for our review:

> Did the lower court abuse its discretion, and err as a matter of law as the [Agency] failed to present clear and convincing evidence supporting the termination of [Mother's] parental rights?

*See* Mother's Brief at 7.[2]

We review this issue mindful of our well-settled standard of review.

---

[2] We observe that Mother has filed eight briefs with this Court – two briefs per child (one for each docket). The briefs are virtually identical and do not differentiate between the Children, or between the dockets; although Mother addresses the goal change challenge in the discussion section of each brief, she did not list the goal change issue in the statement of issues involved section, in apparent circumvention of Pa.R.A.P. 2116(a). We address the effect of Mother's noncompliance below.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to section 2511(b): determination of the needs and welfare of the child[.]

*In re C.M.K.,* 203 A.3d 258, 261-262 (Pa. Super. 2019) (citation omitted).

Instantly, the orphans' court terminated Mother's parental rights pursuant to Section 2511(a)(5), (8), and (b).  But because Mother does not contest the court's determinations under Section 2511(b), we need only agree with the orphans' court as to any one subsection of Section 2511(a) in order to affirm.  *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*)

- 7 -

(holding that the Superior Court need only conclude termination was warranted under any one subsection under Section 2511(a) as well as Section 2511(b)). Therefore, we analyze the court's decision to terminate under Section 2511(a)(8), which provides as follows:

> **(a) General rule**.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S. § 2511(a)(8).[3]

We have observed that a termination under Section 2511(a)(8) involves a three factor analysis:

> [T]o terminate parental rights pursuant to 23 Pa.C.S.A § 2511(a)(8), the following factors must be demonstrated: (1) the child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child. Section

---

[3] With respect to a petition filed under Section 2511(a)(8), we note that the Adoption Act prohibits the court from considering "any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition." **See** 23 Pa.C.S. § 2511(a)(b).

2511(a)(8) sets a 12-month time frame for a parent to remedy the conditions that led to the children's removal by the court. Once the 12-month period has been established, the court must next determine whether the conditions that led to the child's removal continue to exist, despite the reasonable good faith efforts of the Agency supplied over a realistic time period. Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of Agency services

*In re Z.P.*, 994 A.2d 1108, 1118 (Pa. Super. 2010) (citations and quotations added).

Immediately, Mother recognizes that the first factor was satisfied; the Children have been removed from parental care for approximately 20 months, well over the 12-month timeframe designated by the statute. *See* Mother's Brief at 23-24.

The next factor analyzes whether the conditions which led to the removal or placement of the Children continue to exist. Mother argues that her incarceration was the impetus of the Children's removal, and that because she is no longer incarcerated, that condition ceases to exist. *Id.* at 20. Mother hardly mentions her mental health issues, nor her inability to properly meet the Children's needs, both of which contributed to the Children's dependency. Without any citation to the record to support her claim, Mother contends that she did follow through with service providers, notwithstanding contrary testimony that these service providers closed their cases on account of Mother's noncompliance and/or lack of progress. *See id.*; *see also*, *e.g.*, N.T., 8/13/20, at 64-65; 84.

Similarly, although Mother has been able to find employment and housing at various times throughout the dependency case, neither was for any considerable length of time. While indigency is not a suitable basis for termination, Mother's inability to provide basic needs for the Children was demonstrative of her inability, after 20 months, to alleviate the conditions that led to the Children's dependency or otherwise make progress toward reunification. We conclude that the court did not err when it determined that the Agency satisfied this second factor under Section 2511(a)(8).

Mother does not brief the third factor of Section 2511(a)(8), whether termination was best serves the Children's needs and welfare. *Id.* We are inclined to infer Mother thus concedes that the third and final Section 2511(a)(8) factor was met. However, we observe that Mother's brief does discuss the third factor in her challenge to termination under Section 2511(a)(5), which is substantially the same as the third factor under Section 2511(a)(8). *See id*. at 25. It seems, then, Mother does not actually concede the point, but that she meant to rely on her previous discussion under Section 2511(a)(5).

In any event, we conclude the court did not err when it determined termination would best serve the Children's needs and welfare under Section 2511(a)(8). As mentioned above, Mother has not alleviated the conditions which led to the Children's removal. There are two concerns that are particularly relevant to the question of whether termination best serves the Children's needs and welfare: visitation and parental ability.

Although Mother attended in-person visitations prior to the pandemic, throughout the entire pendency of this case, she never demonstrated such progress or ability to warrant unsupervised visits. The two youngest Children – 3-year-old D.A. and 2-year-old N.A. – likely have no memory of being in Mother's primary care. Moreover, Mother has failed to perform any parental duties or obligations since the dependency case began. For instance, Mother has not been involved in their education or medical well-being. The Children also had developmental delays when they came into foster care, although those concerns have mostly been resolved due to the foster parents' care. Without their biological parents, the Children have had to turn to the foster parents for their needs and welfare. The foster parents are a pre-adoptive resource, and the Children all reside together. After 20 months, the Children are in need of stability and permanency, which can be immediately achieved by termination. Moreover, there is no indication Mother could achieve reunification any time soon.

In sum, we conclude the court rightly determined that the Agency satisfied all three factors under Section 2511(a)(8). Because Mother does not contest the court's findings under Section 2511(b), our analysis is complete. Thus, the court did not err or abuse its discretion when it determined that termination was warranted.

Next, we turn to the question of goal change. As mentioned above, Mother neglected to identify this matter in the statement of issues involved section of her brief. But under a separate heading in the discussion section of

her brief, Mother contends that the goal should not have been changed from reunification to adoption. **See** Mother's Brief at 25. Her argument is essentially a restatement of her prior points regarding termination.

Initially, we observe Mother's noncompliance with our Rules of Appellate Procedure. Rule 2116 provides: "The statement of the questions involved must state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail. […] No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."[4] Pa.R.A.P. 2116(a).

We need not determine whether Mother's goal change issue was "fairly suggested" by her brief or separate notices of appeal, however. Even if the goal change issue was properly before us, the effect of our decision to affirm the orphans' court's termination decrees necessarily renders moot the dependency court's decision to change the Children's goals to adoption. **See Interest of D.R.W.**, 227 A.3d 905, 917 (Pa. Super. 2020) ("An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force of effect.") (Citation omitted).

Termination decrees and goal change orders affirmed.

---

[4] We note, however, Mother otherwise preserved the issue by filing separate notices of appeal under Pa.R.A.P. 341(a), as construed by **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>03/12/2021</u>