J-S09029-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: Q.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2759 EDA 2024 |

Appeal from the Order Entered September 24, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000263-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: Q.D.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2760 EDA 2024 |

Appeal from the Decree Entered September 24, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000453-2020

BEFORE:   LAZARUS, P.J., BECK, J., and STEVENS, P.J.E.*

MEMORANDUM BY BECK, J.:                    **FILED MARCH 21, 2025**

C.W. ("Mother") appeals from the decree entered by the Philadelphia County Court of Common Pleas ("orphans' court"), terminating her parental rights to Q.D.R. ("Child"), born in January 2018, pursuant to pursuant to 23

---

* Former Justice specially assigned to the Superior Court.

Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b),[1] and the order changing Child's permanency goal to adoption. Mother's counsel, Attorney James J. DeMarco, Jr., has filed a petition to withdraw and brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009). After review, we grant Attorney DeMarco's petition to withdraw and affirm the termination decree and goal change order.

The orphans' court set forth the relevant underlying facts as follows:

> On February 7, 2019, [Philadelphia Department of Human Services ("DHS")] received a Child Protective Services (CPS) report which alleged that [Mother] punched [Child] in the face; that [Child's] face was bloody and swollen; and that the 12th District of the Philadelphia Police Department (PPD) was contacted but never arrived at the home. The report alleged that [Child] suffered pain because of the incident. The report was founded.
>
> On February 8, 2019, DHS visited the home of [Mother]. [Mother] advised DHS that [Child] was not at home and was with her sister, A.W. [Mother] invited DHS into the home to assess the home, which was deemed appropriate. DHS advised [Mother] that DHS would return to her home to see [Child]. On February 8, 2019, DHS returned to the home of [Mother] to see [Child]. [DHS] did not observe any bruises on [Child's] face. DHS took a picture of [Child's] face at that time.
>
> On February 9, 2019, DHS received allegations [Child] had a bruise on his face which [Mother] had been covering with makeup. On February 9, 2019, DHS returned to the home of [Mother] …. DHS contacted the police, and [Mother] came outside the home with [Child] and agreed to be transported to the hospital. [Mother] admitted that someone else had applied makeup to [Child's] face. On February 9, 2019, DHS took [Child] to the Children's Hospital of Philadelphia (CHOP), [Mother]

_____

[1] By separate decree, the orphans' court terminated the parental rights of Child's father, A.J. ("Father"). Father has filed an appeal from this decree at 2415 EDA 2024.

accompanied DHS. At CHOP, [Mother] stated that the bruises to [Child's] face were a result of him falling on a "hard toy." DHS was advised by CHOP staff that [Child's] injuries did not appear to be consistent with falling on a toy, and he was admitted for observation. [Mother] subsequently told DHS that she and her paramour, D.R., had a physical altercation while she was holding [Child] and that D.R. "took a swing" at her but missed and hit [Child]. DHS pointed out that [Child] had bruises on both sides of his face, and [Mother] stated that after the altercation, [Child] hit his face on a chair. [Mother] also stated that she had dropped [Child] during her confrontation with D.R.

\* \* \*

On February 11, 2019, the CHOP Child Protection Team stated that [Child's] facial bruising involved multiple planes of his face and would not be explained by a single impact, such as falling on a toy. The Team stated that [Child's] injuries were consistent with physical abuse occurring in the context of domestic violence. … On February 11, 2019, DHS obtained an [order of protective custody ("OPC")] ….

On February 11, 2019, DHS [placed Child in foster care]. …

On February 21, 2019, an initial Single Case Plan (SCP) was created. The parental objectives were: 1) [Mother] will continue to participate in therapeutic services as scheduled and comply with all recommendations including medication; 2) [Mother] will comply with [the Clinical Evaluation Unit ("CEU")] for dual diagnosis; 3) [Mother] will participate in domestic violence counseling; 4) [Mother] will complete parenting classes; 5) [Mother] will sign all authorizations and releases to ensure proper service delivery; 6) [Mother] will visit with [Child] per court order; 7) [Mother] will comply with forthwith [drug and alcohol] screen, and three random screens prior to the next court date; 8) [Mother] will locate and occupy suitable housing with appropriate space and all operable utilities; 9) [Mother] will allow [Community Umbrella Agency ("CUA")] access to the home; 10) [Mother] will allow CUA to complete clearances on anyone residing in her home as required[.]

Orphans' Court Opinion, 12/19/2024, at 2-6 (citations omitted).

On February 15, 2019, DHS filed a dependency petition, seeking an adjudication of dependency based on the above information. On March 18, 2019, following a hearing, the orphans' court adjudicated Child dependent. In a separate order entered on March 18, 2019, the orphans' court found aggravated circumstances existed as to both parents, as Child was the victim of physical abuse while in Mother's care and Father was required to register as a sexual offender because of his prior conviction of involuntary deviate sexual intercourse with a minor. Subsequently, the orphans' court held numerous permanency review hearings, finding Mother's compliance with her SCP goals to be minimal.

On May 14, 2024, DHS filed a petition to terminate Mother's parental rights pursuant to section 2511(a)(1), (2), (5), (8) and (b). On the same date, DHS filed a petition to change the goal to adoption. The orphans' court held a hearing on the petitions on September 24, 2024.[2] Ultimately, the orphans' court entered a decree terminating Mother's parental rights under section 2511(a)(1), (2), (5), (8), and (b), and a separate order changing Child's goal to adoption.

Mother filed separate notices of appeal from the decree and order. Both Mother and the orphans' court complied with Pennsylvania Rule of Appellate Procedure 1925.

_____

[2] Separate counsel represented Child's best and legal interests at the hearing. *See* 23 Pa.C.S. § 2313(a).

- 4 -

**Anders/Santiago**

On appeal, Attorney DeMarco has filed a petition to withdraw representation and an **Anders** brief. When an **Anders** brief is before this Court, we may not review the merits of any possible underlying issues without first examining counsel's request to withdraw. **In re Adoption of B.G.S.**, 240 A.3d 658, 661 (Pa. Super. 2020); **see also In re S.M.B.**, 856 A.2d 1235, 1237 (Pa. Super. 2004) (explaining that the **Anders** procedure for court-appointed counsel seeking to withdraw has been extended to appeals involving termination of parental rights).

To withdraw pursuant to **Anders**, counsel must "petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous[.]" **In re J.D.H.**, 171 A.3d 903, 907 (Pa. Super. 2017) (citation omitted). Additionally, counsel must file an **Anders** brief that satisfies the following criteria:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**B.G.S.**, 240 A.3d at 661 (quoting **Santiago**, 978 A.2d at 361).

Finally, counsel also must provide a copy of the *Anders* brief to the client, along with a letter that advises the client of the immediate right to: "(1) retain new counsel to pursue the appeal; (2) proceed pro se on appeal; or (3) raise any points that the appellant deems worthy of the court's attention in addition to the points raised by counsel in the *Anders* brief." *In re X.J.*, 105 A.3d 1, 4 (Pa. Super. 2014) (citation and brackets omitted).

"Once counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review of the orphans' court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." *Id.* (citation omitted). Our independent review is not limited to the issues that counsel discussed in the *Anders* brief, but extends to "additional, non-frivolous issues" that counsel may have overlooked. *J.D.H.*, 171 A.3d at 908 (citation omitted). An appeal is frivolous when it "lacks any basis in law or fact." *Santiago*, 978 A.2d at 356 (citation omitted).

Our review confirms that Attorney DeMarco's petition to withdraw and *Anders* brief comply with the requirements outlined above. Attorney DeMarco has filed a petition with this Court stating that after reviewing the record, he finds this appeal to be wholly frivolous. *See* Petition for Leave to Withdraw as Counsel, 1/22/2025. Further, Attorney DeMarco attached to his petition to withdraw the letter he sent to Mother, which enclosed the petition and *Anders* brief. *See* Letter, 1/22/2025. Attorney DeMarco's letter advised Mother of her right to proceed pro se or with private counsel, and to raise any additional

- 6 -

issues that she deems worthy of this Court's consideration. ***Id.*** In conformance with ***Santiago***, Attorney DeMarco's brief includes summaries of the facts and procedural history of the case and discusses the issues he believes might arguably support Mother's appeal. ***See Anders*** Brief at 20-30. Attorney DeMarco's brief further sets forth his conclusion that the appeal is frivolous and includes discussion and citations to the record in support of his conclusion. ***See id.*** Because Attorney DeMarco has complied with the technical and procedural requirements for withdrawing from representation, we turn our attention to the issues raised in the ***Anders*** brief:

1. Whether the [orphans'] court abused its discretion and/or erred as a matter of law in terminating [M]other's parental rights under 23 Pa.C.S.[] § 2511(a) and (b) because the decision was not supported by competent evidence[?]

2. Whether the [orphans'] court abused its discretion and/or erred as a matter of law in changing the goal of the case to adoption because the decision was not supported by competent evidence[?]

***Anders*** Brief at 8 (some capitalization omitted).[3]

### Termination of Parental Rights

In reviewing an appeal from a decree terminating parental rights, we adhere to the following standard:

> In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. This standard of review corresponds to the standard

_____

[3] Mother has not made any additional filings in this matter either pro se or through privately retained counsel.

- 7 -

employed in dependency cases, and requires appellate courts to accept the findings of fact and credibility determinations of the [orphans'] court if they are supported by the record, but it does not require the appellate court to accept the [orphans'] court's inferences or conclusions of law. That is, if the factual findings are supported, we must determine whether the [orphans'] court made an error of law or abused its discretion. An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion; we reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill will. Thus, absent an abuse of discretion, an error of law, or insufficient evidentiary support for the [orphans'] court's decision, the decree must stand. We have previously emphasized our deference to [orphans'] courts that often have first-hand observations of the parties spanning multiple hearings. However, we must employ a broad, comprehensive review of the record in order to determine whether the [orphans'] court's decision is supported by competent evidence.

*In re Adoption of C.M.*, 255 A.3d 343, 358-59 (Pa. 2021) (quotation marks, brackets, and citations omitted).

Termination of parental rights is governed by 23 Pa.C.S. § 2511, which requires a bifurcated analysis. *See C.M.*, 255 A.3d at 359. "Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a)." *In re C.M.K.*, 203 A.3d 258, 261-62 (Pa. Super. 2019) (citation omitted). If the orphans' court determines the petitioner established grounds for termination under section 2511(a) by clear and convincing evidence, the court then must assess the petition under subsection 2511(b), which focuses on the child's needs and welfare. *Int. of Z.N.B.*, 327 A.3d 241, 248 (Pa. Super. 2024).

Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***Matter of Adoption of L.C.J.W.***, 311 A.3d 41, 48-49 (Pa. Super. 2024) (citation omitted).

As stated above, the orphans' court terminated Mother's rights to Child pursuant to section 2511(a)(1), (2), (5), and (8). This Court "may affirm the [orphans'] court's decision regarding the termination of parental rights with regard to any one subsection of [s]ection 2511(a)." ***In re J.F.M.***, 71 A.3d 989, 992 (Pa. Super. 2013). We focus our analysis on section 2511(a)(2), which provides as grounds for termination of a parent's rights:

> The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S. § 2511(a)(2).

Termination of a parent's rights pursuant to section 2511(a)(2) requires that the petitioner show, by clear and convincing evidence, that the parent is presently unable to care for the child and will not be able to care for him for the foreseeable future. ***Int. of A.R.***, 311 A.3d 1105, 1112 (Pa. Super. 2023).

> A child has a right to a stable, safe, and healthy environment in which to grow, and the child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting. When a parent has demonstrated a continued inability to conduct her life in a manner conducive to

- 9 -

providing a safe environment for a child, and the behavior is irremediable as supported by clear and competent evidence, the termination of parental rights is justified.

*Id.* at 1111. The grounds for termination of parental rights under section 2511(a)(2) are not limited to affirmative misconduct; those grounds may also include "acts of refusal as well as incapacity to perform parental duties." *In re N.A.M.*, 33 A.3d 95, 100 (Pa. Super. 2011). "[P]arents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties." *Int. of Z.N.B.*, 327 A.3d at 249 (citation omitted). Notably, a "parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *In re Z.P.*, 994 A.2d 1108, 1118 (Pa. Super. 2010) (citation omitted).

With these tenets in mind, we review the evidence at the hearing. Whitnee Crawford ("Crawford"), a CUA case manager, testified she has been involved in the case since November 2023. N.T., 9/24/2024, at 13. She stated that Child was brought into DHS care because of physical abuse of Child and concerns about Mother's housing. *Id.* Crawford explained Mother's single case plan objectives included, inter alia, complying with court orders, completing drug testing, attending all scheduled visits, and participating in a parenting evaluation. *Id.* She indicated Mother was minimally compliant with her goals. *Id.* at 38. For her drug and alcohol goal, Crawford testified that Mother tested positive for cocaine on May 9, and had not enrolled in any drug

and alcohol program. *Id.* at 14, 16; *see also id.* at 14-15 (noting Mother tested positive for cocaine after DHS filed its petition on June 4, 2024).

As to Mother's mental health goal, Crawford testified that Mother was involuntarily committed to a psychiatric hospital in March 2024, where she remained for two days; she left against medical advice. *Id.* at 20-21. She stated that Mother tested positive for cocaine while in the hospital. *Id.* at 21. Mother attended cognitive behavioral health and was diagnosed with schizoaffective disorder, bipolar, panic disorder, and paroxysmal anxiety. *Id.* at 23.

As for parenting and visitation, Crawford testified that Mother only attended one of two scheduled appointments for the parenting capacity evaluation. *Id.* at 23-24. During visits, Mother was erratic in front of Child, with Crawford noting she yelled a lot and would complain about various issues. *Id.* at 25, 27. Indeed, Mother's visitation rights with Child were suspended in August 2024, after she threatened the resource parent and the CUA in court. *Id.* at 25-26. Crawford testified that on one visit with Child, Mother threw gifts at Child and said she "wasn't doing this shit and then walked away." *Id.* at 26. Crawford stated that Mother only attended seven of twenty scheduled visits. *Id.*

For housing, Crawford testified that Mother had been kicked out of a rooming house because of a fight with her girlfriend, had been living in her friend's vehicle, and failed to provide an updated address to DHS. *Id.* at 31-

32. Crawford confirmed that she has had difficulty communicating with Mother. *Id.* at 25, 32. According to Crawford, the only goal Mother addressed in any way was domestic violence, with Crawford confirming that Mother completed a domestic violence class. *Id.* at 37-38.

Mother testified that she additionally completed a parenting class. *Id.* at 49-50. She indicated that she lives in Georgia with her sister and has a bedroom available for Child. *Id.* at 50-51. She stated that the new address was provided to the CUA caseworker. *Id.* at 51, 65. Mother acknowledged her 302 commitment, but stated that she is in mental health treatment. *Id.* at 51-52, 64; *see also id.* at 67 (Mother stated that she had depression, anxiety, and schizoaffective disorder).

Mother otherwise largely acknowledged her noncompliance with her SCP goals. She testified that she could not complete the parental evaluation because it "was too much for me to handle." *Id.* at 52. She admitted that her positive tests for cocaine, and stated she put "a little cocaine in my weed when I was a little stressed," but does not do cocaine every day. *Id.* at 52; *see also id.* at 62-63.

Mother emphasized that she attended Child's basketball practice and his Pre-K graduation, and that she has bought books, clothes, and sneakers for Child. *Id.* at 54, 56-57. Mother indicated that she is ready to care for Child. *Id.* at 59. Mother also disputed that she threw gifts at Child. *Id.* at 66.

The orphans' court found the DHS witnesses to be credible and Mother's testimony to be incredible. *See* Orphans' Court Opinion, 12/19/2024, at 19. The orphans' court further found that Mother suffers from mental illness and has failed to make progress on her goals. *Id.* The orphans' court concluded that "Mother's inability to care for [] Child was clear." *Id.*

The evidence of record supports the orphans' court's determination that Mother is not able to presently parent Child and will be unable to do so for the foreseeable future. *See A.R.*, 311 A.3d at 1112. The evidence establishes that "incapacity" under section 2511(a)(2) exists given that Mother was in minimal compliance with her SCP goals, which were imposed to ensure her capacity to assume Child's care. *See In re D.L.B.*, 166 A.3d 322, 328 (Pa. Super. 2017) (stating a parent's failure to cooperate with agency services, participate in drug treatment, and complete mental health counseling establish s/he cannot remedy the problems that led to placement). Further, Mother has failed to demonstrate an ability to remedy the problems that led to Child's placement. *See In re C.M.K.*, 203 A.3d at 262 ("Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties."). Mother has not completed drug and alcohol classes or established she has stable housing. Additionally, Mother has not provided essential parental care for Child, who, at the time of the termination hearing, had been in care for over five years. *See id.* (stating "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to

assume parenting responsibilities") (citation omitted). We therefore agree with Attorney DeMarco that any claim that the orphans' court erred or abused its discretion as to the consideration of section 2511(a)(2) is frivolous.

Turning to the needs and welfare analysis required under subsection (b), Mother argues that the orphans' court erred in finding she did not have a bond with Child. Mother's Brief at 26-27. Mother contends that she had a great bond with Child and acted as a parent to Child. *Id.*

> Section 2511(b) provides:
>
> The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b).

Our analysis focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). "[T]he determination of the child's needs and welfare requires consideration of the emotional bonds between the parent and child. The utmost attention should be paid to discerning the effect on the child of permanently severing the parental bond." *Id.* (quotation marks omitted). It is not enough that there exists a bond between parent and child to avoid termination. *Interest of K.T.*, 296 A.3d

- 14 -

1085, 1109 (Pa. 2023). Rather, the orphans' court must determine whether the bond is "necessary and beneficial" to the child, such that "maintaining the bond serves the child's developmental, physical, and emotional needs and welfare." *Id.* at 1105-06. Focusing upon the "child's development, and mental and emotional health," the orphans' court should assess whether severing the bond "is the kind of loss that would predictably cause extreme emotional consequences or significant, irreparable harm" to the child. *Id.* at 1110-11.

Additionally, "the parental bond is but one part of the overall subsection (b) analysis[.]" *Id.* at 1113. The needs and welfare analysis must also include the consideration of factors such as: "the child's need for permanency and length of time in foster care …; whether the child is in a preadoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety, and stability." *Id.* (citations omitted). "These factors and others properly guide the court's analysis of the child's welfare and all [their] developmental, physical, and emotional needs." *Id.*

The orphans' court found that "the testimony and evidence indicated [] Child and his caregiver share a parental bond, and the caregiver is providing for [] Child's daily emotional and physical needs." Orphans' Court Opinion, 12/19/2024, at 14; *see also id.* at 19 ("It was clear to the [orphans'] court from the testimony that a parent/child bond existed between [] Child and his

current caregiver[].").  "In contrast, the [orphans'] court found that Mother lacked the capacity and understanding to address [] Child's basic emotional and physical needs."  *Id.* at 14.  Further, the orphans' court found that the "testimony of the witnesses presented by DHS was deemed to be credible and accorded great weight.  Mother's testimony was entirely self-serving and largely incredible."  *Id.* at 19.

The record confirms the orphans' court's conclusion.  Crawford testified that Child has been in the care of resource parent, R.S., since November 2021, and that Child depends on R.S. for all his needs.  N.T., 9/24/2024, at 32-33. According to Crawford, R.S. ensures Child attends all his appointments, Child is thriving and happy in R.S.'s home, looks to her for comfort and support, and calls her mom.  *Id.* at 33, 35.  Crawford testified that Child has seen his biological relatives on a frequent basis while in R.S.'s care.  *Id.* at 34.  She observed that Child did not have a parent-child relationship with Mother and they did not share a bond.  *Id.* at 33-34.  Crawford asserted there would be no irrevocable harm if Mother's parental rights were terminated and it would be in Child's best interests to have Mother's rights terminated.  *Id.* at 34; *see also id.* at 35 (noting Mother has mentally harmed Child by her behavior).

R.S. testified that Child has been in her home since November 2021. *Id.* at 41.  She noted that after Child's visits with Mother, he would be very hungry and would tell R.S. things Mother said that scared him.  *Id.* at 42. R.S. stated that on one occasion, Child thought Mother was trying to hurt him

or have somebody kill him. *Id.* at 42-43. She testified that Mother attended one medical appointment for Child and that although Mother was invited to family therapy, the therapist indicated Mother did not have the capacity to complete joint therapy. *Id.* at 42-43, 45. R.S. stated that Child did not want to talk to Mother and that Mother was very disrespectful to her. *Id.* at 44-46.

Conversely, Mother testified that she has a "great" bond with Child. *Id.* at 57. She stated that she tells Child she loves him and that Child is happy to see her. *Id.* at 57-58. Mother indicated Child gave her birthday and Mother's Day cards, and that she threw him birthday parties. *Id.* at 58.

Based on the record before us and the standard of review we must employ, we discern no abuse of discretion in the orphans' court's conclusion that Child is bonded to the resource parent, that termination best met Child's needs and welfare, and that Child will not be irreparably harmed by terminating Mother's parental rights. *See K.T.*, 296 A.3d at 1113. The evidence the orphans' court found to be credible demonstrates that Mother did not engage in a caregiving role or meet Child's developmental needs and did not have a bond with Child. *See In re P.Z.*, 113 A.3d 840, 852 (Pa. Super. 2015) (finding termination of parental rights supported under section 2511(b) where child was familiar with parent, but no attachment existed and parent did not have a history of engaging in a caregiving relationship with child or taking responsibility for child over an extended period). Accordingly, we conclude that the orphans' court did not err or abuse its discretion in

- 17 -

determining that Child's developmental, emotional, and physical needs and welfare are best met by terminating Mother's parental rights. As the orphans' court's determination pursuant to section 2511(b) is supported by the record, we must affirm the orders terminating Mother's parental rights to Child. *See C.M.*, 255 A.3d at 358-59. We agree with Attorney DeMarco that any contrary claim is frivolous.

### Goal Change

Next, Mother contends that the orphans' court erred in changing the goal to adoption. *Anders'* Brief at 28. Mother claims that the goal should have been changed to permanent legal custody to preserve her bond with Child and give her more time to complete her goals. *Id.* at 29.

Given our decision to affirm the orphans' court's termination decree, any challenge to the goal change order is moot. *See In re Adoption of A.H.*, 247 A.3d 439, 446 (Pa. Super. 2021). Mother's claim is therefore frivolous.

Our independent review of the record has disclosed no non-frivolous issues overlooked by Attorney DeMarco. *See J.D.H.*, 171 A.3d at 908. Therefore, we grant Attorney DeMarco's petition to withdraw from representation, affirm the decree terminating Mother's parental rights to Child pursuant to section 2511(a)(2) and (b), and affirm the order changing Child's goal to adoption.

Petition to withdraw granted. Decree affirmed. Order affirmed.

- 18 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>3/21/2025</u>