J-A09021-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF L.N.M.-R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.R., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1401 WDA 2023 |

Appeal from the Order Entered November 15, 2023
In the Court of Common Pleas of Greene County Orphans' Court at
No(s):  No. 17 O.A. 2022

| | | |
|---|---|---|
| IN RE: ADOPTION OF T.L.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.R., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1402 WDA 2023 |

Appeal from the Order Entered November 15, 2023
In the Court of Common Pleas of Greene County Orphans' Court at
No(s):  No. 16 O.A. 2022

| | | |
|---|---|---|
| IN RE: ADOPTION OF M.J.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.R., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1403 WDA 2023 |

Appeal from the Order Entered November 15, 2023
In the Court of Common Pleas of Greene County Orphans' Court at
No(s):  18 O.A. 2022

BEFORE:  DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED: May 20, 2024**

T.R. (Father) appeals the decision of the Greene County Orphans' Court, which terminated his rights to his four-year-old daughter L.N.M.-R., three-year-old son T.L.R., and two-year-old son M.J.R. (collectively, the Children), pursuant to the Adoption Act. *See* 23 Pa.C.S.A. § 2511(a)(2), (a)(5), (b). After careful review, we affirm.[1]

The relevant factual and procedural history is as follows. The family has been involved with the Greene County Children and Youth Services Agency (CYS) since 2019, when the oldest Child, L.N.M.-R., was an infant. At that time, CYS was concerned with L.N.M.-R.'s failure to gain weight. L.N.M.-R. was temporarily placed with a family member under a safety plan. The Agency then provided Mother and Father with services and education regarding the proper way to feed and nourish a baby. L.N.M.-R. eventually returned to the parents' care, and CYS closed the case without court intervention.

CYS had similar involvement with the family in February 2021. The Agency learned that the then-six-month-old T.L.R. had been taken to the hospital due to "failure to thrive." The family received more services, and CYS closed its case.

Two months later, in April 2021, CYS received a report that T.L.R. was malnourished. During the ensuing home visit, CYS discovered that the home

---

[1] The orphan's court also terminated the rights of A.G. (Mother). Her appeals are separately listed before this panel. *See* 1446, 1447, and 1448 WDA 2023. We further note that T.R. is the putative father of L.N.M-R.

was messy, cluttered, and smelled of rotten food, but it was not unsafe. The parents agreed to take T.L.R. to the hospital, and CYS eventually learned that T.L.R. still only weighed 11 pounds, 8 ounces. The Agency then obtained an order of protective custody and removed T.L.R. and L.N.M.-R. from their parents' care.

In May 2021, the juvenile court adjudicated both Children dependent. Mother and Father were "indicated" as perpetrators of abuse by CYS.[2] The parents' reunification objectives included: "do parenting classes, Parents as Teachers, High Fidelity Wraparound, mental health evaluation, and to follow through with any recommended services of those mental health evaluations." **See** Orphans' Court Order, 11/15/23, at *4 (not paginated), ¶24. Mother had only one positive drug test during the dependency proceedings – THC. However, Mother said she had concerns about Father's drug use after finding methamphetamines in the home.

In October 2021, Mother gave birth to the parties' third child, M.J.R. CYS removed M.J.R. after he was released from the hospital. The orphans'

---

[2] In its findings of fact and conclusions of law, issued contemporaneously with its final termination order, the orphans' court noted that neither parent appealed their "indicated" perpetrator status.

An "indicated" status is based on the child protective service agency's own assessment. **See, e.g., J.F. v. Department of Human Services**, 245 A.3d 658, 660-61 (Pa. 2021). The agency's own assessment that there was parental abuse or neglect is not, by itself, evidence of the same. To be sure, the facts underlying the agency's assessment may be the same facts supporting a court's finding of abuse or neglect; but we have cautioned courts not to inadvertently outsource their fact-finding function. **See Interest of A.E.**, 305 A.3d 982 (non-precedential decision).

court concluded that neither parent completed their reunification objectives, although Mother had progressed more than Father. Mother had completed some parenting classes, but not others. She had consistently engaged with some mental health services, but the efficacy of those services was in doubt. For instance, Mother and Father were ordered to attend perpetrator counseling services. Although Mother was unsuccessfully discharged by one counselor, she subsequently completed the course. Even so, the counselor opined that the services might not be effective, given Mother's lack of engagement and her propensity to shift blame onto others. Father never resumed counseling after being discharged. Importantly, the parents were offered 122 visits with the Children. Mother attended only 46, and Father attended only 36. During the visits, the parents had a difficult time caring for the Children and attending to their basic needs.

Meanwhile, the Children had progressed in their pre-adoptive foster home. Dr. Eric Bernstein, a licensed psychologist, performed the mental health evaluations and a bonding assessment of the parents. Dr. Bernstein concluded that there was an existing bond between the parents and the Children, but that the bond had been compromised due to the parents' inconsistency. Dr. Bernstein determined that the Children were also bonded to their foster parents and recommended that the parents' rights be terminated.

The orphans' court held a hearing on CYS' petitions to terminate the parents' rights on April 18, 2023.[3]  Nearly seven months later, on November 15, 2023, the orphans' court issued orders granting the petitions and terminating the parents' rights, pursuant to 23 Pa.C.S.A. § 2511(a)(2), (a)(5), and (b); the court denied CYS' petitions as to Section 2511(a)(1).[4]

---

[3] We note that the court indicated in its order that Father was not present at the termination hearing.  Upon review of the transcript, it seems Father was at the courthouse, but did not want to be in the courtroom.  Counsel said Father was "kind of having half-panic attack[s] most of the morning."  Nevertheless, counsel indicated that Father would be made available for questioning.  *See* N.T. at 3-4.

[4]  The orphans' court stated in its final order, issued contemporaneously with its findings of fact and conclusions of law, that the evidentiary hearing on the termination petitions was held on July 12, 2023.  In actuality, the court held the hearing on April 18, 2023. However, the court evidently held the record open three additional months to allow an Agency's witness to respond to a rule to show cause as to why the witness should not be held in contempt for failure to appear at the termination hearing.  It appears the witness eventually responded to the rule to show cause in July 2023, at which point the rule was dissolved.

We do not understand why the court opted to keep the record open; the court had already determined that the testimony was complete and none of the parties requested that the record remain open to allow the missing witness to testify.

The orphans' court then waited another four months to issue its final order.  Instead of adjudicating the petitions, the court required the parties to submit proposed findings of fact and conclusions of law.

We remind the orphans' court of the urgency of juvenile matters, and specifically the need for permanency and the risks that children face when permanency is delayed. ***See In re Adoption of K.B.***, 311 A.3d 1166, 1174-75 (Pa. Super. 2024).  We have discovered no explicit orphans' court rule mandating prompt termination of parental rights decisions.  However, the
*(Footnote Continued Next Page)*

Father timely filed this appeal, and he presents the following issue for our review:

> 1. Was there clear and convincing evidence presented to show that termination was warranted pursuant to 23 Pa.C.S.A. § 2511(a)(2) and (a)(5)?

Father's Brief at 3.

We begin with our well-settled standard of review:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Our Supreme Court has repeatedly stated that in termination cases, deference to the trial court is particularly crucial. *In re Adoption of L.A.K.*, 265 A.3d 580, 597 (Pa. 2021); *see also Interest of S.K.L.R.*, 265 A.3d 1108,

---

Rules governing juvenile matters, orphans' court matters, and custody matters all suggest diligence. *See, e.g.,* Pa.R.C.P. 1915.4(d)(requiring the trial judge to enter a custody decision within 15 days of the trial's conclusion, unless there be an extension for good cause, whereby the decision shall be entered no more than 45 days after the trial's conclusion).

1124 (Pa. 2021) ("When a trial court makes a 'close call' in a fact-intensive case involving…the termination of parental rights, the appellate court should review the record for an abuse of discretion and for whether evidence supports that trial court's conclusions; the appellate court should not search the record for contrary conclusions or substitute its judgment for that of the trial court.").

Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (quoting *Matter of Adoption Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998)).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to section 2511(b): determination of the needs and welfare of the child[.]

*In re C.M.K.*, 203 A.3d 258, 261-62 (Pa. Super. 2019) (citation omitted).

We need only agree with the lower court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm the court's decree. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*); *see also C.S.*, 761 A.2d at 1201. Instantly, the court terminated Mother's rights

under 23 Pa.C.S.A. § 2511(a)(2), (a)(5) and (b). We review the court's determinations under Section 2511(a)(2).

That subsection provides:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

To terminate parental rights under Section 2511(a)(2), the Agency must prove "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *C.M.K.*, 203 A.3d at 262. The grounds for termination are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied. *In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010). Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties. *Id.*

On appeal, Father argues that the record does not support termination under Section 2511(a)(2). He highlights his completion of certain parenting, argues that had implemented those skills as evidenced by Dr. Bernstein's

testimony that he was appropriate with the Children during the visits. *See* Father's Brief at 11. In short, Father maintains that the causes of the Children's removal have been remedied, that there is record evidence showing that Father was able to perform the necessary parenting duties. *Id.*

In its findings of fact and conclusions of law, issued contemporaneously with its termination order, the orphans' court opined:

> The record leaves no doubt that the parents have evidenced a continued incapacity and neglect and cannot provide the Children with the necessary parental care and subsistence; and they both are mostly unwilling or fail to recognize the conditions and causes of what needs to be done to remedy such.
>
> To be fair, Mother has certainly done more in this regard than Father, but her consistent failure to make any meaningful progress seems to be mainly due to her failure to recognize the issues that need remedied or show any accountability whatsoever. […] There is no evidence whatsoever that [] [Father can or will remedy the situation.

Orphans' Court Order, 11/15/23 at *10 (not paginated) (style adjusted).

Upon review, we discern no abuse of discretion. Father's participation in the reunification plan was minimal, and critically, he only attended one third of the offered visits. It was not manifestly unreasonable for the orphans' court to conclude that the record demonstrated Father's unwillingness, or inability, to parent the Children. That he completed some services and was appropriate during some visits, does not defeat the court's ultimate decision. Father gave the court little reason to believe that reunification with the Children would be safe. His claim merits no relief.

- 9 -

In short, we conclude the orphans' court did not err or abuse its discretion when it determined that CYS provided sufficient evidence warranting the termination of Father's rights under 23 Pa.C.S.A. § 2511(a)(2).

Orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 5/20/2024