J-S39018-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

IN THE INTEREST OF: Z.F., A MINOR  :  IN THE SUPERIOR COURT OF
                                         :  PENNSYLVANIA
                                         :

APPEAL OF: R.B., MOTHER  :
                                         :
                                         :
                                         :
                                         :
                                         :
                                         :  No. 867 WDA 2024

Appeal from the Order Entered June 20, 2024
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): CP-02-AP-11-2024

BEFORE: DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY KUNSELMAN, J.:        **FILED: December 5, 2024**

R.B. (Mother) appeals from the order granting the petition filed by Allegheny Office of Children, Youth, and Families (the Agency) terminating her parental rights to her son, Z.F. (the Child), pursuant to the Adoption Act. *See* 23 Pa.C.S.A. §§ 2511(a)(1), (a)(2), (a)(5), (a)(8), (b). After review, we affirm.[1]

The orphans' court succinctly summarized the pertinent facts and procedural history as follows:

> Mother has a significant history with [the Agency] largely due to her unaddressed substance abuse issues. The family has been active with [the Agency] since 2020 and two of Mother's older children have been removed from her care. [The Agency] continued to monitor Mother's substance abuse issues when she became pregnant with [the Child]. In October of 2022, Mother tested positive for Fentanyl. She also had a positive drug screen

---

[1] The court also involuntarily terminated the rights of S.F. (Father), who did not appeal.

at a routine pre-natal checkup on December 27th, 2022. [The Child] was born [in January of 2023]. Based on the circumstances which brought the older children into care and Mother's ongoing substance abuse issues, [the Agency] obtained an Emergency Custody Authorization for [the Child] on January 9th, 2023. The [Agency] took custody of [the Child] upon his release from the hospital and he was placed in [a] foster home[.] [The Agency] filed a dependency petition, and [the Child] was adjudicated dependent on February 14th, 2023. Mother's parental rights to the two older children were subsequently terminated in [April of 2023].[2]

Permanency Review Hearings were held in May and August of 2023 and in February and May of 2024. The court found Mother to be in minimal compliance and to have made minimal progress in each of these hearings. In each hearing, the court found that Mother had not maintained contact with [the Agency] and was not attending random urine screens regularly. The May 2023 hearing was the only permanency review in which the court noted that Mother had been attending visitation regularly. In each of the subsequent hearings, the court found that Mother had not been visiting with [the Child] consistently. The court granted an Aggravated Circumstances Petition on December 6th, 2023, and [the Agency] was relieved of making reasonable efforts to reunify the family. [The Agency] filed the petition for involuntary termination of Mother's rights on February 13th, 2024.

Orphans' Court Opinion, 8/9/24, at 2-3 (citations to record omitted).

The orphans' court held a termination hearing on May 31, 2024. At the beginning of the hearing, Mother's counsel informed the court that Mother was not present even though counsel attempted to contact her and received no response. The court then heard testimony from an employee of the Allegheny County Health Department regarding Mother's drug screens and results, the

---

[2] On October 25, 2023, we affirmed the orphans' court's termination order. *See In the Interest of A.F.*, 307 A.3d 687 (Pa. Super. 2023) (non-precedential decision).

manager of foster care for the Child, and the Agency's caseworker who had been involved with the family since 2020. The Agency also introduced a report from Dr. Eric Bernstein, Psy.D., who observed and evaluated the Child's interaction with the foster parents. Although Dr. Bernstein contacted Mother, she did not appear for an evaluation.

The orphans' court issued its termination order the same day, May 31, 2024. Specifically, the court determined that the Agency proved grounds for termination existed under 23 Pa.C.S.A. §§ 2511(a)(2), (a)(5), (a)(8), and (b).

Mother timely filed this appeal. She presents the following issue for our review:

1. Did the [orphans'] court abuse its discretion and/or err as a matter of law in concluding that [the Agency] met its burden of proving by clear and convincing evidence that termination of Mother's parental rights would best serve the needs and welfare of [the Child] pursuant to 23 Pa.C.S. § 2511(b)?

Mother's Brief at 6.

We begin with our well-settled standard of review:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

- 3 -

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (quoting *Matter of Adoption Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998)).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to section 2511(b): determination of the needs and welfare of the child[.]

*In re C.M.K.*, 203 A.3d 258, 261-62 (Pa. Super. 2019) (citation omitted).

Mother does not challenge the orphans' court's decision under Section 2511(a), thereby conceding the first prong of the bifurcated termination analysis. Rather, Mother presents only a narrow challenge under Section 2511(b). That subsection provides:

> **(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as

- 4 -

> inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S.A. § 2511(b).

On appeal, Mother argues that she "loves" the Child and "offers many benefits to him." Mother's Brief at 11. According to Mother, she and the Child "have the right to have their relationships preserved," and the "benefits [she] offers to [the Child] can only be assured if [she] retains her parental rights." *Id.* Citing to testimony from the Agency's witnesses, Mother contends that her visits with the Child went well, and that she demonstrated that she could meet the Child's physical needs because she recognized that the Child needed a diaper change and did so successfully. *Id.* at 13. Further, testimony was presented that the Child responds positively to her and that she demonstrated she was attentive to him. *Id.* Finally, Mother asserts that testimony established she was able to safely care for the Child because she screened "negative for illicit substances when she had transportation to attend drug screens," and that the Agency's caseworker testified that Mother "was attending drug and alcohol treatment" and "had obtained housing and was working with in-home services." *Id.*

Mother's claims fail because her arguments primarily concern Section 2511(a), which focuses on the parent's conduct.[3] The focus of a Section

---

[3] Our review of the hearing transcript refutes Mother's assertions. For example, the Agency's caseworker testified that she was "never able to confirm" that Mother was fully engaged in drug and alcohol treatment." N.T. *(Footnote Continued Next Page)*

2511(b) analysis is on the Child and the bond, if any, between the parent and child. ***C.M.K.***, 203 A.3d at 261-62.

Significantly, the question under Section 2511(b) is not merely whether a bond exists. As the Supreme Court explained, trial courts must determine whether the child has a bond with the biological parent, the nature of that bond, and effect that severance of the bond would have on the child. ***In the Interest of K.T.***, 296 A.3d 1085, 1109 (Pa. 2023) (citing ***T.S.M.***, 71 A.3d at 267, 269). Thus, the question for the court is whether termination would sever a necessary and beneficial bond. "[T]o grant termination when a parental bond exists, there must be clear and convincing evidence that the bond is not necessary and beneficial." ***Id.*** at 1114.[4] The Supreme Court held

_____

5/31/24 at 48. Further, while Mother did obtain housing, it was never seen by the Agency to see if it was safe for an infant to live in. Finally, while at one time Mother participated with in-home services, these services were later closed. ***See id.*** at 55-57.

[4] The Court recognized that severance of ***any*** bond could have an "adverse impact" and upset the child. Therefore, courts must focus on the ***nature*** of the bond commensurate with the impact of severing that bond:

> Severance of a "necessary and beneficial" bond would predictably cause more than the "adverse" impact that, unfortunately, may occur whenever a bond is present. By contrast, severance of a necessary and beneficial relationship is the kind of loss that would predictably cause "extreme emotional consequences" or significant, irreparable harm. Moreover, by evaluating the impact of severance to determine if it will impose more than an adverse or detrimental impact, courts correctly refine their focus on the child's development and mental and emotional health rather than considering only the child's "feelings" or

*(Footnote Continued Next Page)*

that the trial court "must not truncate its analysis and preclude severance based solely on evidence of an 'adverse' or 'detrimental' impact to the child." *Id.*

Moreover, our Supreme Court cautioned the parent-child bond inquiry is but one factor to consider under a proper Section 2511(b) analysis. *Id.* at 1111 (citing *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)). "[B]ond, *plus* permanency, stability and all 'intangible' factors may contribute equally to the determination of a child's specific developmental, physical, and emotional needs and welfare, and thus are all of 'primary' importance in the Section 2511(b) analysis." *Id.* at 1109 (emphasis added). The Supreme Court held that trial courts have discretion to place appropriate weight on each factor before making a decision under Section 2511(b). *Id.* at 1113.

Here, the orphans' court provided the following detailed explanation of its Section 2511(b) analysis:

> The court considered several factors in its best interests' analysis including the safety needs of [the Child] and his need for permanence, the bond between [the Child] and Mother, the length of time that he has spent in foster care, the bond between [the Child] and his foster parents, [and] the foster [parents'] ability to meet his specific needs[.]
>
> The safety needs of a child are always an important factor in the court's best interests' analysis. Substance abuse concerns

---

"affection" for the parent, which even badly abused and neglected children will retain.

*K.T.*, 296 A.3d at 1109-1110 (footnotes and internal citations omitted).

always factor into the court's safety evaluations. Mother abused drugs during her pregnancy and throughout the time [the Child] has been in foster care. She has never successfully completed drug and alcohol treatment and has been unable to sustain an extended period of clean time. Since October of 2022, Mother only attended [6] out of [42] drug screens. She only provided a usable sample [4] out of those [6] times and tested positive for fentanyl in October of 2022. The last time she appeared for a screen was on February 23rd, 2023. For the visits that Mother attended, she often arrived late or went into the bathroom for an extended period of time. The visit supervisor also reported that Mother [had] fallen asleep during visits on several occasions. Mother has not attended any family planning meetings and has not maintained contact with [the Agency]. The court believes Mother's ongoing substance abuse concerns would place [the Child] at risk if he was returned to her care.

[The Child] has never been in Mother's care and her visitation has been sporadic. Mother only attended [37] out of [160] visits offered to her. She did not show for her scheduled evaluation with [Dr. Bernstein] so a formal bonding assessment was not conducted. Mother has never met the daily needs of [the Child] outside of brief periods of visitation. While [the Child] appears comfortable in the presence of [Mother] during visitation, the court finds that there is little to no bond between the two. In contrast, all reports are that [the Child] shares a strong bond with his foster parents. [The manager of foster care for the Child] has observed [the Child] in the foster home on numerous occasions and had no concerns. [The Agency's caseworker] reported that [the Child] appears comfortable in the home and looks to his foster parents to meet his needs. Dr. Bernstein evaluated [the Child] with his foster parents on March 14th, 2024. He opined that [the Child] shared a secure and healthy bond with his foster parents and likely viewed them as his "psychological" parents. He reported that they appear informed and invested in [the Child's] needs and reported no concerns with their care of [the Child].

[The Child] has been in the foster care placement of [the foster parents] since he was approximately five days old. The foster parents have consistently met all of [the Child's] daily needs as well as his special needs. [The Child] has several significant health issues that center around eating and dietary issues. He was attending swallow therapy and treating with a nutritionist to address these issues. He also was attending physical therapy. The foster mother arranged all of these therapy appointments as

well as his medical appointments. Mother has not consistently attended [the Child's] medical appointments, therapies or surgeries. The court does not believe that Mother is remotely capable of addressing any of [the Child's] medical or therapeutic needs. The [foster parents] are a pre-adoptive placement and have successfully adopted two other children. The court believes that the [foster parents] offer [the Child] permanency that he needs and will continue to provide him with safety and stability.

In conclusion, Mother has taken no steps towards reunifying with [the Child]. She has continued to prioritize her drug use over [the Child]. Mother's lifestyle poses a safety risk to [the Child] and she is incapable of meeting his developmental, physical, and emotional needs and welfare.

Orphans' Court Opinion, 8/9/24, at 6-8 (citation to record omitted).

Our review of the termination hearing transcript supports the orphans' court's conclusion that the Child's safety was the primary reason why it concluded that termination under Section 2511(b) was appropriate. *See In re N.A.M.*, 33 A.3d 95, 103 (Pa. 2011) (explaining "[i]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child[.]").

Moreover, the only evidence of a bond presented to the orphans' court concerned the Child's bond with the foster parents. Because Mother did not appear for the hearing, or for an evaluation with Dr. Bernstein, there was no evidence presented of a bond between Mother and the Child. As noted above, the orphans' court found little to no bond between them, but acknowledged the strong bond the Child had with his foster parents.

Finally, although we do not question the sincerity of Mother's love for the Child, this alone does not provide a basis to avoid termination when it is

in the Child's best interests. ***See In re Z.P.***, 994 A.2d 1108, 1121 (Pa. Super. 2010) (citation omitted) (explaining that "[a] parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights.")

In sum, we conclude the orphans' court did not err or abuse its discretion by concluding that the Agency presented clear and convincing evidence to terminate Mother's parental rights under Section 2511(b).

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

12/5/2024