J-S03031-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: K.D. A/K/A K.A.D., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.M. A/K/A J.M.M. A/KA J.D. A/K/A J.M.D. A/K/A J.M.D. A/K/A J.M.M. A/K/A J.M.M., MOTHER | : : : : : : | No. 698 WDA 2024 |

Appeal from the Order Entered May 14, 2024
In the Court of Common Pleas of Washington County Orphans' Court at
No(s): 63-23-1632,
CP-63-DP-0000002-2023

| | | |
|---|---|---|
| IN RE: ADOPTION OF M.D. A/K/A M.M.D., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.M. A/K/A J.M.M. A/KA J.D. A/K/A J.M.D. A/K/A J.M.D. A/K/A J.M.M. A/K/A J.M.M., MOTHER | : : : : : : | No. 699 WDA 2024 |

Appeal from the Order Entered May 14, 2024
In the Court of Common Pleas of Washington County Orphans' Court at
No(s): 63-23-1631,
CP-63-DP-0000172-2021

BEFORE: KUNSELMAN, J., SULLIVAN, J., and BECK, J.

MEMORANDUM BY BECK, J.:                    **FILED: May 15, 2025**

J.M. ("Mother") appeals from the orders entered by the Washington County Orphans' Court ("orphans' court") granting the petitions to terminate her parental rights to K.D., born October 2022, and M.D., born May 2019

(collectively "Children"), pursuant to 23 Pa.C.S. § 2511(a)(2), (5), and (b).[1] We affirm.

Washington County Children and Youth Social Service Agency ("Agency") first became involved with the family[2] in December 2021 after Mother was involved in a car accident and found to be under influence of drugs. Both Mother and Father (together, "Parents") had substance abuse issues, and Father had been in and out of prison. The Agency ordered both Mother and Father to get drug tests. Mother attempted to falsify the test. Ultimately, Mother tested positive for PCP and fentanyl. Father did not take a drug screen. Children were removed from Parents' care, and the orphans' court ordered Mother to participate in a drug and alcohol evaluation, submit to random drug and alcohol testing, participate in an individual psychological evaluation and an interactional evaluation. M.D. was placed in kinship care and was later returned to Parents in July 2022 and court supervision ceased in October 2022.

The Agency subsequently received two referrals, one informing it of K.D.'s birth and one in December 2022 regarding Parents' substance abuse.

---

[1] The orphans' court entered separate orders terminating the parental rights of Children's father, J.D. ("Father"). Father has filed a separate appeal from that decision.

[2] Mother has another child, C.A., who was initially part of the dependency proceedings involving Children. The Agency withdrew its petition to terminate parental rights as to C.A. during the termination hearing of Children. N.T., 4/29/2024, at 7. As such, C.A. is not a part of this appeal.

On January 5, 2023, Washington County Adult Probation took Mother into custody after she tested positive for several illicit substances and was found in possession of drug paraphernalia at a drug and alcohol evaluation. Mother admitted that she and Father had been using crack cocaine since K.D.'s birth. The Agency also had domestic violence concerns in Parents' home. The Agency received a verbal emergency custody authorization in January 2023, and the Children were placed in kinship care. Ultimately, Children were placed with M.P. ("Foster Mother") and A.P. (together, "Foster Parents") in February 2023.

The Agency filed a dependency petition, and the orphans' court held an adjudication hearing on March 1, 2023. At the time of the hearing, Mother and Father were in inpatient drug and alcohol treatment. The orphans' court found Children to be dependent and ordered Mother to attend inpatient drug and alcohol treatment; follow the recommendations for continued treatment upon discharge; comply with random drug and alcohol testing at least twice per month; comply with in-home service providers; maintain stable housing; refrain from criminality; follow the terms of probation; complete parenting classes and demonstrate an understanding of and implement the learned skills; and attend individual and interactional psychological evaluations.

On July 18, 2023, the orphans' court held a permanency review hearing, and found that Mother was in substantial compliance with the permanency plan and had made substantial progress toward alleviating the circumstances

that led to Children's removal. Father was in substantial compliance with the permanency plan, and had made moderate progress. Mother was in outpatient care for drug and alcohol treatment at that time. The orphans' court ordered Mother to continue to participate in drug and alcohol treatment and permitted supervised visits with Children. Subsequently, however, Mother was not compliant with drug treatment and urine screens, and failed drug tests. On August 24, 2023, the orphans' court entered an order reducing Mother's visitation to two supervised two hour visits per week.

On October 13, 2023, the Agency filed separate petitions seeking to terminate Mother's parental rights to Children under sections 2511(a)(1), (2), (5), and (b).[3] The case proceeded to a hearing on the petition on April 4, 2024. Following two days of hearings, at which multiple witnesses testified,[4] the orphans' court terminated Mother's parental rights under sections 2511(a)(2), (5), and (b). Mother filed a timely notice of appeal. Both Mother

_____

[3] Mother was incarcerated from October 24, 2023, through December 18, 2023, based upon violations of her probation, including leaving inpatient care without permission, failing drug tests, and failing to report.

[4] Attorney Erin Dickerson entered her appearance as counsel for Children. Attorney Dickerson also indicated that she is Children's guardian ad litem ("GAL"), and that there was no conflict of interest in her ability to represent both the best and legal interests of Children. N.T., 4/29/2024, at 5; N.T., 4/4/2024, at 9; *see also In re Adoption of K.M.G.*, 240 A.3d 1218, 1235 (Pa. 2020) (stating that "where an orphans' court has appointed a GAL/[c]ounsel to represent both the child's best interests and legal interests, appellate courts should review sua sponte whether the orphans' court made a determination that those interests did not conflict").

and the orphans' court complied with Pennsylvania Rule of Appellate Procedure 1925.

Mother raises the following questions for our review:

A. Whether the [orphans'] court erred in finding that [the Agency] had proven by clear and convincing evidence the statutory grounds, applying facts and law, for termination under 23 Pa.C.S. §§ 2511(a)(2) and (5)[?]

B. Whether the [orphans'] court erred in finding that [the Agency] had proven by clear and convincing evidence the statutory grounds, applying facts and law, for termination under 23 Pa.C.S. § 2511(b)?

Mother's Brief at 5.

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. This standard of review corresponds to the standard employed in dependency cases, and requires appellate courts to accept the findings of fact and credibility determinations of the [orphans'] court if they are supported by the record, but it does not require the appellate court to accept the [orphans'] court's inferences or conclusions of law. That is, if the factual findings are supported, we must determine whether the [orphans'] court made an error of law or abused its discretion. An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion; we reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill will. Thus, absent an abuse of discretion, an error of law, or insufficient evidentiary support for the [orphans'] court's decision, the decree must stand. We have previously emphasized our deference to [orphans'] courts that often have first-hand observations of the parties spanning multiple hearings. However, we must employ a broad, comprehensive review of the record in order to determine

whether the [orphans'] court's decision is supported by competent evidence.

*In re Adoption of C.M.*, 255 A.3d 343, 358-59 (Pa. 2021) (quotation marks, brackets, and citations omitted).

Termination of parental rights is governed by 23 Pa.C.S. § 2511, which requires a bifurcated analysis. *See C.M.*, 255 A.3d at 359. "Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a)." *In re C.M.K.*, 203 A.3d 258, 261-62 (Pa. Super. 2019) (citation omitted). If the orphans' court determines the petitioner established grounds for termination under section 2511(a) by clear and convincing evidence, the court then must assess the petition under subsection 2511(b), which focuses on the child's needs and welfare. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Matter of Adoption of L.C.J.W.*, 311 A.3d 41, 48-49 (Pa. Super. 2024) (citation omitted).

As stated above, the orphans' court terminated Mother's rights to Child pursuant to section 2511(a)(2) and (5). Orphans' Court Opinion, 5/14/2024, at 8. "This Court may affirm the [orphans'] court's decision regarding the termination of parental rights with regard to any one subsection of [s]ection 2511(a)." *In re J.F.M.*, 71 A.3d 989, 992 (Pa. Super. 2013). We focus our

analysis on subsection (a)(2), which provides as grounds for termination of a parent's rights:

> The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S. § 2511(a)(2).

Termination of a parent's rights pursuant to section 2511(a)(2) requires that the petitioner show, by clear and convincing evidence, that the parent is presently unable to care for the child and will not be able to care for him for the foreseeable future. *Int. of A.R.*, 311 A.3d 1105, 1112 (Pa. Super. 2023).

> A child has a right to a stable, safe, and healthy environment in which to grow, and the child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting. When a parent has demonstrated a continued inability to conduct her life in a manner conducive to providing a safe environment for a child, and the behavior is irremediable as supported by clear and competent evidence, the termination of parental rights is justified.

*Id.* at 1111.

Mother argues that the orphans' court abused its discretion in terminating her parental rights, claiming that the Agency failed to prove her repeated and continued incapacity to parent Children that will not or cannot be remedied. Mother's Brief at 36. Mother highlights that she had substantial compliance with her court ordered services and had made substantial progress in alleviating the circumstances necessitating removal in July 2023. *Id.* at

36-37. Mother notes that the trial court erred in not returning Children to her care at the July 2023 hearing, and in reducing her visitation in August 2024 without a hearing. *Id.* at 37. Mother contends that the Agency failed to produce evidence that her substance abuse constitutes neglect or refusal that causes Children to be without care, or that they were psychologically harmed by her behaviors. *Id.* Mother asserts that her visitation was never suspended and that her pattern of relapse "could be viewed as temporary incapacities." *Id.* at 38 (emphasis omitted). Mother further notes that she never refused drug and alcohol treatment and participated in rehabilitation programs. *Id.* Mother points to Dr. Rosenblum's testimony regarding her rehabilitation and her need for trauma services, which would have aided her mental health and her addiction. *Id.* at 38-39. Mother argues that she was not offered such services, which were necessary to her recovery. *Id.* at 40-41. Mother claims that the permanency review orders establish her improved compliance and progress over time. *Id.* at 40.

The orphans' court provided the following explanation for its decision to terminate Mother's parental rights under section 2511(a)(2):

> The facts of the present case support that both parents have had repeated and continued periods of incapacity, either through incarceration, addiction or treatment causing the Children to be without essential parental care, control or subsistence necessary, as required by the Act. During the times of incapacity, care of the [] Children has been taken care of by the placement provider. Further, despite repeated services, [Mother] continue[s] to struggle with the issues and behaviors that form the foundation of the dependency cases. This pattern was reflected through the testimony and evidence presented by the Agency that establishes

years of similar actions. Based on the foregoing, th[e orphans' c]ourt finds that the Agency has established grounds for termination under [section] 2511(a)(2).

Orphans' Court Opinion, 5/14/2024, at 3.

The record supports the orphans' court's conclusion. Justin Faloshey ("Faloshey"), an Agency caseworker, testified that he has been assigned to Children since July 2021. N.T., 4/4/2024, at 36-37. Faloshey indicated that the family first came to the Agency's attention in December 2021 because of Mother's car accident while under the influence of drugs, and her subsequent positive drug test. *Id.* at 39. At the time, Mother was ordered to participate in drug and alcohol evaluation, submit to random drug testing, participate in an individual psychological evaluation, and complete domestic violence counseling. *Id.* at 42. Faloshey noted that Mother and Father had made progress with their goals and court supervision was terminated in October 2022. *Id.* at 44-45, 83. The Agency became involved with Mother, however, in December 2022, based on a report that she was again using illicit drugs. *Id.* at 46. Subsequently, Mother admitted that she had been using crack cocaine since K.D. was born. *Id.* at 47. Additionally, Washington County Adult Probation took Mother into custody on January 5, 2023, after testing positive for seven illicit substances. *Id.* at 46. On January 6, 2023, the Agency received emergency authorization to take custody of Children; they were placed in kinship care. *Id.* at 48. Faloshey also noted there were domestic violence concerns between Mother and Father. *Id.* at 48, 49, 140-

41, 144-45. Faloshey stated that at the time Children were adjudicated dependent, Mother was receiving inpatient treatment at House of Healing. *Id.* at 52-53. As part of her permanency plan, Mother was ordered to attend inpatient treatment with a drug and alcohol provider and follow all recommendations; be compliant with random drug testing at least twice a month; comply with in-home service providers; refrain from criminality; follow all terms of probation; complete nurturing parent substance abuse curriculum; and attend an individual and interactional psychological with a licensed psychologist. *Id.* at 54.

Faloshey indicated Mother was in substantial compliance of the goals and had made substantial progress at the permanency hearing in July 2023. *Id.* at 59. At that time, Mother was receiving outpatient drug and alcohol treatment. *Id.* at 60. Faloshey noted that Mother's visitation with Children was changed from Mother's home and to be fully supervised in August 2023. *Id.* at 60, 70. Faloshey testified that the visits were modified because Mother had allowed Father into her home during the visits, in contravention of a court order. *Id.* at 60-61. Faloshey indicated that Mother was not compliant with drug treatment and urine screens starting on July 18, 2023, and that Mother had failed to maintain her sobriety. *Id.* at 61, 132, 144, 160. Further, Mother was incarcerated from October 24, 2023, through December 18, 2023, due to violations of her probation. *Id.* at 62, 66, 90-91, 146; ***see also id.*** at 66, 132 (noting Mother was placed back in prison in January 2024 for testing

positive for cocaine, and was in prison at the time of the hearing). Faloshey stated that Mother was incarcerated for leaving inpatient care, failing to report to probation, and testing positive for drugs. *Id.* at 62-64, 91. Moreover, Mother has not provided any financial support for Children, nor does she provide for their daily needs. *Id.* at 71-72. Mother also does not take Children to medical appointments or make any medical decisions. *Id.* at 73. Faloshey testified that Mother's failure to participate in services was self-created and that she had no barrier to services. *Id.* at 127. Faloshey admitted that Mother was doing well for a period, including having stable housing, feeding Children, and being attentive to their needs. *Id.* at 82, 87-88, 89; *see also id.* at 86 (noting Mother was consistent with her visits with Children). Faloshey, however, concluded that Mother is not able to parent Children, and Children should not be placed in her care. *Id.* at 133.

Dr. Neil Rosenblum testified that he conducted an interactional evaluation with Children and Foster Parents, an individual evaluation of Mother, and an interactional evaluation of Mother with Children. *Id.* at 166-67. Dr. Rosenblum indicated that Mother had a "very troubling history of substance abuse problems" and has been the "victim of domestic violence." *Id.* at 167, 168; *see also id.* at 173 (noting Mother had a "lifestyle that has reflected chronic and continued substance abuse problems and domestic violence throughout her adult life"). Dr. Rosenblum stated that Mother has a very limited ability to remain drug free, has a limited understanding of

domestic violence, and fails to understand how her addiction, domestic violence, and unresolved mental health issues have impacted Children. *Id.* at 168. Dr. Rosenblum noted that Mother has a positive relationship with Children, but lacks the stability to care for Children due to her pronounced substance abuse problems, pattern of reckless judgment, and poor decision-making. *Id.* at 169. Dr. Rosenblum diagnosed Mother with bipolar disorder, post-traumatic stress disorder, stimulant use disorder, adult antisocial behavior, and parent/child relationship problems. *Id.* at 171. Dr. Rosenblum indicated that trauma therapy and domestic violence counsel could help her, but emphasized she has attended these types of programs, yet continues to engage in the same behavior. *Id.* at 172, 177. He opined that the "prognosis is not very positive for Mother making gains. These are long-standing, almost life-long problems." *Id.* at 172. Dr. Rosenblum was of the opinion that termination of Mother's parental rights was consistent with Children's needs and welfare. *Id.* at 169-70.

Diane Patterson ("Patterson"), a volunteer Court Appointed Special Advocate ("CASA"), testified that biological parents have not demonstrated any ability to provide for Children. N.T., 4/29/2024, at 175. Additionally, Patterson confirmed that Foster Mother takes M.D. to therapy and any doctor's appointments—Mother does not attend. *Id.* at 162-63. Likewise, Foster Mother set up appointments early intervention services for K.D. and ensured K.D. attended the appointments. *Id.* at 165-66. She further stated that

Foster Mother assists Children in day-to-day activities, engages Children in community activities, and that neither Father nor Mother engage in such activities. *Id.* at 164-65.

In her testimony, Mother acknowledged that at the time Children were removed for the second time in January 2023, she was sent to prison for testing positive for seven illicit drugs. N.T., 4/29/2024, at 109. Mother noted that she did not contest the adjudication of Children, and was in inpatient care at the time. *Id.* at 110. Mother testified that she attended inpatient rehabilitation until April 2023, which helped her address her triggers and her addiction. *Id.* at 94-95, 111. She admitted that Children were exposed to drugs and that she was high at times when she was with them. *Id.* at 102. Mother stated that she went to intensive outpatient care after her inpatient stay, where she learned about addiction, discussed her trauma, and worked on building a better support system. *Id.* at 95-96, 105. Mother indicated that she completed drug and alcohol treatment and parenting classes, but did not complete domestic violence counseling. *Id.* at 96-97, 113, 145. She went back to prison in October 2023, after she relapsed. *Id.* at 97. Mother attributed her relapse to a change in the visitation with Children. *Id.* at 116. Mother testified she went to inpatient care upon relapse but was unsuccessfully discharged; she then went to outpatient treatment for five days. *Id.* at 117-19. In Mother's view, she did not have adequate support from the Agency. *Id.* at 100, 105. Mother conceded, however, that she had

not "completely taken care of" the conditions that led to Children's removal. *Id.* at 103.

Based on our standard of review, we conclude that the evidence of record supports the orphans' court's determination that Mother is not able to presently parent Children and will be unable to do so for the foreseeable future. *See A.R.*, 311 A.3d at 1112. The evidence establishes that "incapacity" under section 2511(a)(2) exists given that Mother has failed to demonstrate a concrete ability to remedy the problems that led to Children's placement. Mother admits that she has an addiction problem, which she had not resolved at the time of the termination hearing, and showed a pattern of incapacity to parent. Moreover, Mother failed to establish any stability in her life, as she has been in and out of rehabilitation programs and prison. Although Mother has expended considerable effort to straighten out her life, and relapse is part of the recovery process, Children's life cannot be placed on hold or put in harm's way in the hope that Mother will gain the ability to handle parenting responsibilities. *See id.* at 1111. At the time of the termination hearing, Children had been in care for approximately sixteen months, and for M.D., this was the second time in foster care, having previously been removed from Parents' care for seven months based upon the same concerns.

Further, contrary to Mother's arguments, Dr. Rosenblum testified that she received various types of therapy yet continues to show the same behaviors. Moreover, Faloshey indicated that Mother's failure to complete

services was to the result of her noncompliance, not for a failure to offer such services. We therefore find no abuse of discretion in the orphans' court's finding that the Agency presented clear and convincing evidence in support of termination pursuant to section 2511(a)(2).

We next consider whether the record supports the orphans' court's conclusion that there was clear and convincing evidence to terminate Mother's rights pursuant to section 2511(b). Section 2511(b) provides:

> The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S. § 2511(b).

Mother argues that the orphans' court abused its discretion in finding the Agency proved by clear and convincing evidence that termination would serve the best interests of Children. Mother's Brief at 44-51. Mother contends that the orphans' court did not determine whether the bond between Mother and Children was "necessary and beneficial." *Id.* at 46; *see also id.* at 50. Mother claims that Dr. Rosenblum failed to testify regarding the bond between Mother and Children or the impact of severing such a bond. *Id.* at 46, 50. Mother asserts that evidence was presented showing her bond with Children. *Id.* at 50. Mother further highlights that she suffers from serious medical conditions, namely addiction and mental health issues, and notes that she is engaging in substance abuse treatment. *Id.* at 47. Mother claims the

- 15 -

orphans' court only focused on one factor in determining the Agency met the requirements of section 2511(b)—that Foster Parents consistently meet Children's needs. *Id.* at 48-50.

Our analysis focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. *T.S.M.*, 71 A.3d at 267. "[T]he determination of the child's needs and welfare requires consideration of the emotional bonds between the parent and child. The utmost attention should be paid to discerning the effect on the child of permanently severing the parental bond." *Id.* (quotation marks omitted). It is not enough that there exists a bond between parent and child to avoid termination. *See Interest of K.T.*, 296 A.3d 1085, 1109 (Pa. 2023). Rather, the trial court must determine whether the bond is "necessary and beneficial" to the child, such that "maintaining the bond serves the child's developmental, physical, and emotional needs and welfare." *Id.* at 1105-06. Focusing upon the "child's development, and mental and emotional health," the trial court should assess whether severing the bond "is the kind of loss that would predictably cause extreme emotional consequences or significant, irreparable harm" to the child. *Id.* at 1110-11.

Additionally, "the parental bond is but one part of the overall subsection (b) analysis[.]" *Id.* at 1113. The needs and welfare analysis must also include the consideration of factors such as: "the child's need for permanency and length of time in foster care …; whether the child is in a preadoptive home

- 16 -

and bonded with foster parents; and whether the foster home meets the child's developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety, and stability." *Id.* (citations omitted). "These factors and others properly guide the court's analysis of the child's welfare and all [their] developmental, physical, and emotional needs." *Id.* Importantly, "[orphans'] courts have the discretion to place appropriate weight on each factor present in the record before making a decision regarding termination that best serves the child's specific needs." *Id.*

Thus, a court must examine the matter from the child's perspective, placing his "developmental, physical, and emotional needs and welfare above concerns for the parent." *Id.* at 1105. "[T]he law regarding termination of parental rights should not be applied mechanically but instead always with an eye to the best interests and the needs and welfare of the particular children involved." *T.S.M.*, 71 A.3d at 268-69. The party seeking termination bears the burden of proving, by clear and convincing evidence, that termination of parental rights serves a child's needs and welfare. *K.T.*, 296 A.3d at 1105.

With respect to its needs and welfare analysis, the orphans' court explained:

> Here, [Children's] safety, security, daily needs and overall physical, mental and emotional needs are cared for by the Foster Parents. While [the orphans' c]ourt has no doubt that Mother and Father truly love[] their Children, testimony and evidence do not support the conclusion that maintaining the present relationship is in the best interests of the Children. This evaluation is made considering the continuity of relationships and the physical, developmental[,] and emotional needs of the Children.

- 17 -

Based on the evidence presented and the testimony provided during the two-day proceeding[,] th[e orphans'c]ourt finds that the Agency has met [its] burden by clear and convincing evidence under [section] 2511(b). The testimony and evidence establish that while the Children have some connection to Mother …., the daily needs of the Children are regularly and consistently met in the placement home. The Children seek out [F]oster [P]arents for their needs, in a home where they are part of a moderately large, loving and caring family that extends into their church community. The evidence unequivocally establishes that the best interest of the [C]hildren is served by allowing them to maintain continuity, consistency and care in the placement home and being able to achieve permanency through adoption.

Orphans' Court Opinion, 5/14/2024, at 7-8.

The record confirms the orphans' court conclusion. Faloshey testified that Children have been in Foster Parents' care since February 2023. N.T., 4/4/2024, at 72. He indicated that Foster Mother takes Children to their medical appointments and Foster Parents meet all the Children's needs. *Id.* at 73-74. He emphasized that Children are "very attached" to Foster Parents. *Id.* at 75. Faloshey indicated Children were happy at Foster Parents' home and are bonded with Foster Parents. *Id.* at 106, 147-49; *see id.* at 149, 151 (noting that M.D. calls Foster Parents mom and dad and looks to them for emotional support); *id.* (stating that K.D. has a particularly strong attachment to Foster Parents). He testified that M.D. has trauma therapy two times a month and attended other developmental therapies, and that Foster Mother initiated these therapies. *Id.* at 124-27. He further stated that Foster Parents are very organized, meet Children's needs, and that Foster Mother homeschools M.D. *Id.* at 149-50.

Dr. Rosenblum testified that Mother had a positive relationship with Children "in terms of the ability to interact with them." *Id.* at 169. Dr. Rosenblum noted that Mother loved Children and had potential as a mother, but her long-term lack of stability led to trauma for Children. *Id.* at 173-74. Dr. Rosenblum further testified that Children have a bond with Foster Parents. *Id.* at 170, 188, 189. Dr. Rosenblum highlighted Children had been in Foster Parents' care for a year when he conducted the evaluation, and that they were doing very well, and getting help with their developmental and mental health concerns. *Id.* at 170. Dr. Rosenblum stated that Foster Parents provide attention, care, and emotional nurturance to Children. *Id.* at 188-89. Dr. Rosenblum emphasized that Foster Mother homeschools Children, and is very loving in her relationship with Children. *Id.* Dr. Rosenblum noted that M.D. started losing weight and would vomit after visits with Mother, but these symptoms went away after the visits ceased. *Id.* at 190-91. Dr. Rosenblum indicated that he would recommend termination of Mother's parental rights. *Id.* at 191-92.

Patterson testified that she visited Children at the Foster Parents' home. N.T., 4/29/2024, at 158. She indicated Children called Foster Mother "mom" and that M.D. is particularly attached to Foster Mother. *Id.* at 159, 171. Additionally, Foster Mother has facilitated visitation between M.D. and his other siblings. *Id.* at 172-73. Patterson indicated that M.D. exhibited concerning behavior after visits with Mother and Father, including throwing

up, diarrhea, and other stress-related behavior. *Id.* at 166-67. Patterson acknowledged, however, that Children were safe with Mother during visits. *Id.* at 180. Nevertheless, Patterson noted that Children have not exhibited sadness in not seeing their biological parents. *Id.* at 176-77. She testified that Foster Parents have demonstrated a commitment to Children, provide them with stability and loving care, and Children would be traumatized if removed from Foster Parents' care. *Id.* at 175-76. Patterson concluded that it would be in Children's best interests to be adopted by Foster Parents. *Id.* at 175, 178.

Mother testified that she has an "extremely close bond" with Children. N.T., 4/29/2024, at 89. Mother noted that M.D. has a close bond with C.A. and looks up to him as an older brother. *Id.* at 90-91. She loves Children and believed the reunification process should continue. *Id.* at 102, 103-04. Mother worries her bond with Children would be severed if termination is granted. *Id.* at 106.

Based on the record before us and the standard of review we must employ, we discern no abuse of discretion in the orphans' court's conclusion that Children are bonded to the Foster Parents, that they best meet Children's needs and welfare, and that Children will not be irreparably harmed by terminating Mother's parental rights. *See K.T.*, 296 A.3d at 1113. The Agency presented evidence that Children were bonded with Foster Parents, loved them, called them mom and dad, and that severing this bond would

harm them. In contrast, the record contains little indication of any bond that exists between Mother and Children, and no evidence that she provides for their needs or welfare. The record clearly reflects Foster Parents' continued and unwavering dedication to addressing Children's physical, emotional, mental, educational and physical needs, and despite her best efforts, Mother's inability to parent Children. *See In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (noting that a parent's "own feelings of love and affection for [children], alone, do[es] not prevent termination of parental rights."); *see also Interest of M.E.*, 283 A.3d 820, 839 (Pa. Super. 2022) (orphans' court does not have to consider the bond between parent and child "over all other needs and welfare considerations"). Thus, we conclude that the orphans' court did not err or abuse its discretion in determining that Children's developmental, emotional, and physical needs and welfare are best met by terminating Mother's parental rights. As the orphans' court's determination pursuant to section 2511(b) is supported by the record, we must affirm the orders terminating Mother's parental rights to Child. *See C.M.*, 255 A.3d at 358-59.

Orders affirmed.

Judge Kunselman joins the memorandum.

Judge Sullivan files a dissenting memorandum.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

5/15/2025