J-A24013-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: J.E.M.-M., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.M., MOTHER | : : : : : : : | |
| | : | No. 690 MDA 2025 |

Appeal from the Decree Entered May 13, 2025
In the Court of Common Pleas of Franklin County Orphans' Court at
No(s):  55-ADOPT-2024

BEFORE:  DUBOW, J., KUNSELMAN, J., and BECK, J.

MEMORANDUM BY BECK, J.: FILED:               **SEPTEMBER 29, 2025**

A.M. ("Mother") appeals from the decree entered by the Franklin County Court of Common Pleas ("orphans' court") terminating her parental rights to J.E.M.-M. ("Child"), born March 2019, pursuant to 23 Pa.C.S. § 2511(a)(1), (2), and (b).  Because we conclude that the orphans' court did not abuse its discretion in terminating Mother's parental rights, we affirm.

The record reflects that in May 2019, around the time Child was eight weeks old, Franklin County Children and Youth Services ("CYS") instituted a dependency action seeking placement of Child after M.M. ("Father"), Child's father, and Mother were arrested, and CYS determined that Mother's home

was no longer safe for Child.[1]  At that time, CYS placed Child in the care of R.M. and S.M. ("Petitioners"), and with the exception of March to September 2023, Child has lived exclusively with Petitioners.  In September 2023, Petitioners filed a complaint for custody of Child and on January 24, 2024, the trial court granted Petitioners primary physical and legal custody of Child.  The custody order allowed Mother to have supervised visits with Child with the consent of Petitioners.  **See** Trial Court Order, 1/24/2024.  The order permitted supervision of the visits by Petitioners, an agreed to third party, or ABC House—an organization located in Chambersburg, Pennsylvania that provides parenting support and education services, including assisting with supervised visitation. **See id.**  On October 31, 2024, Petitioners filed a petition to involuntarily terminate Mother's and Father's parental rights to Child and a report of intention to adopt Child.[2]

_____

[1]  We do not know the details regarding the arrests or the underlying dependency action, as neither the dependency record nor the dependency docket was made part of the record in this case.

[2]  Petitioners had standing to file the petition to involuntarily terminate Mother's and Father's parental rights under section 2512(a)(3) of the Adoption Act.  **See** 23 Pa.C.S. § 2512(a)(3) ("A petition to terminate parental rights with respect to a child under the age of 18 years may be filed by … [t]he individual having custody or standing in loco parentis to the child and who has filed a report of intention to adopt required by section 2531.").

The orphans' court held a hearing on the petition on February 18, 2025,[3] and summarized the testimony related to Mother, which our review of the record confirms, as follows:

> [Child] began living with [Petitioners] approximately eight weeks after his birth as part of a dependency action in Franklin County. He lived with them until [CYS] gave [Child] back to [Mother] in March [2023. Petitioners] went through all the training and background checks to qualify as kinship care providers even though they are not related to [Mother, Father or, Child]. In March 2023, [Mother] was awarded primary custody of [Child], and [Petitioners] were granted weekend periods of partial physical custody. By August [2023], Mother moved from Franklin County to York County and asked [Petitioners] to accept primary custody of the minor child as she tried to address a housing problem. After some back and forth, [Child] ended up [returning to Petitioners] on September 10, 2023, and [has] been with them ever since. [Child] was given to [Petitioners] with a backpack, a toy[,] and the clothes he was wearing.
>
> [As stated above, Petitioners] initiated a custody action in late 2023, and after a hearing held in January 2024, they were granted primary physical and legal custody of the minor child.
>
> [Child] has been diagnosed with ADHD, and he sees a therapist for anxiety and participates in music therapy.
>
> [Child] has a routine in [Petitioners'] household performing many activities, including feeding the dog, taking out the trash, clearing his dishes and putting away his laundry after it is done. He is home-schooled.
>
> Unfortunately, when he attended school with other children, his anxiety would lead to aggressive behaviors and specifically biting children.

_____

[3] Child had legal counsel throughout the termination proceedings. Child's counsel indicated on the record at the termination hearing that she understood she was solely representing his legal interests. **See** N.T., 2/18/2025, at 57.

[Petitioners] support the child financially[,] providing all his food, housing, clothing[,] and anything else he needs.

During the time [Petitioners] and Mother were exchanging [Child], Mother moved at least six times. She was at times homeless and living with various men.

For the six months preceding the filing of the petition to terminate parental rights, Mother provided Petitioners with a single child support payment in July 2024, but did not provide any other financial support for [Child], and [did not] send him any cards or letters, nor [did she provide any] parental supervision or emotional support to [Child].

In the six months preceding filing the petition, [Petitioners did not] move from their residence, and maintained the same phone number and TikTok account. Mother made no effort to contact [Child] through [Petitioners].

Petitioners have concerns for [Child]'s safety as Mother had great trouble caring for herself.

Petitioners intend to adopt [Child], if the parental rights of Mother … are terminated by the [orphans' court].

Even though there was a custody order affording Mother three options to exercise supervised custody with [Child], she did not use any method in the six months before the filing of the petition[.] S.M. and Mother had a difficult relationship, such that [she] cut off communication with Mother, but did not interfere with Mother's ability to contact [Child] through her husband. Mother had financial limitations, and although [Petitioners did not] give Mother any financial help, they did drive [Child] to meet the Mother on several occasions during the custody case, but not during the six months before the filing of the petition. Mother never asked them to provide her financial support.

[Mother] testified to the following: She is living in a Red Roof Inn Hotel in York, Pennsylvania.

Mother testified as to her desire to serve as mother to [Child], despite living in a hotel, having no funds beside food stamps and having no employment. She could not provide any

concrete plans as to how she would meet all his therapeutic needs aside from vague references to using public transportation. …

Orphans' Court Opinion, 6/20/2025, at 7-9 (unnecessary capitalization and record citations omitted).

On May 13, 2025, following an adoption home study, the orphans' court issued a decree involuntarily terminating the parental rights of Mother and Father. Mother timely appealed to this Court.[4] Both Mother and the orphans' court complied with Pennsylvania Rule of Appellate Procedure 1925. Mother presents the following issues for review:

> 1) Did the [orphans' court] err by determining that grounds for the termination of the parental rights of Mother were proven pursuant to 23 Pa.C.S. [§] 2511(a) (1); 23 Pa.C.S. [§] 2511(a)(2)?

> 2) Does the record fail to support the [orphans' court]'s determination that, as to 23 Pa.C.S. [§] 2511(a)(1), "for a period of at least six months immediately preceding the filing of the petition" that Mother "either has evidenced a settled purpose of relinquishing parental claim to" her "child" or that she has "refused or failed to perform parental duties," where contrarily, Mother suggests that she was unduly prevented from engaging in these responsibilities?

> 3) Does the record fail to support the [orphans' court]'s determination that, as to 23 Pa.C.S. [§] 2511(a)(2), Mother's "repeated and continued incapacity, abuse, neglect or refusal" "has caused" Mother's child "to be without essential parental care, control or subsistence necessary for their physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by" Mother, and where, contrarily, Mother suggests that she was unduly prevented from engaging in these responsibilities, and that the [orphans'

_____

[4] Father did not participate in this appeal and has not filed his own appeal.

- 5 -

court] held her to an improper standard in its determination otherwise?

4) Did the [orphans'] court err in determining that Mother "cannot or will not" remedy any alleged deficiencies and that the [c]ourt held her to an improper standard in its determination otherwise, as supported by the record?

5) Does the record fail to support the [orphans' court]'s determination that the conditions which led to the removal or placement of the subject child continue to exist, the parent (Mother) cannot or will not remedy those conditions within a reasonable period of time et al., where, contrarily, Mother suggests that the record shows that she has and can remedy the alleged "conditions," and that the [orphans' court] failed to properly evaluate said facts in application to the law?

6) Did the [orphans'] court fail to determine or opine on whether there is a present bond between [Child] and [Mother] which will be irreparably harmed by termination of [Mother's] rights, nor, at any point whether the determination is in the best interest of the child, which renders the [c]ourt's determination incomplete and insufficient pursuant to 23 Pa.C.S. [§]2511(b)?

Mother's Brief at 4-5.

Mother challenges the termination of her parental rights. In reviewing an appeal from a decree terminating parental rights, we adhere to the following standard:

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. This standard of review corresponds to the standard employed in dependency cases, and requires appellate courts to accept the findings of fact and credibility determinations of the [orphans'] court if they are supported by the record, but it does not require the appellate court to accept the lower court's inferences or conclusions of law. That is, if the factual findings are supported, we must determine whether the [orphans'] court made an error of law or abused its discretion. An abuse of discretion does not result merely because the reviewing court

- 6 -

might have reached a different conclusion; we reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill will. Thus, absent an abuse of discretion, an error of law, or insufficient evidentiary support for the [orphans'] court's decision, the decree must stand. We have previously emphasized our deference to [orphans'] courts that often have first-hand observations of the parties spanning multiple hearings. However, we must employ a broad, comprehensive review of the record in order to determine whether the [orphans'] court's decision is supported by competent evidence.

*In re Adoption of C.M.*, 255 A.3d 343, 358-59 (Pa. 2021) (quotation marks, brackets, and citations omitted).

Termination of parental rights is governed by 23 Pa.C.S. § 2511, which requires a bifurcated analysis. *See id.* at 359. "Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a)." *In re C.M.K.*, 203 A.3d 258, 261-62 (Pa. Super. 2019) (citation omitted). If the orphans' court determines the petitioner established grounds for termination under section 2511(a) by clear and convincing evidence, the court must then assess the petition under subsection 2511(b), which focuses on the child's needs and welfare. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (en banc) (quotation marks and citations omitted).

As stated above, the orphans' court terminated Mother's rights to Child pursuant to subsections (1) and (2) of section 2511(a). Orphans' Court Opinion, 8/29/2024, at 1. "This Court may affirm the [orphans'] court's decision regarding the termination of parental rights with regard to any one subsection of [s]ection 2511(a)." *In re J.F.M.*, 71 A.3d 989, 992 (Pa. Super. 2013). We focus our analysis on subsection (a)(1), which provides as grounds for termination of a parent's rights:

> The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S. § 2511(a)(1).

With respect to subsection (a)(1), Mother asserts that the orphans' court erred in determining that she willingly failed to perform her parental duties. Mother's Brief at 9. She asserts that Petitioners prevented her from performing her parental duties with "obstructive conduct" and failing to cooperate with her in arranging visits with Child so that she could maintain a relationship with him. *Id.* at 9-13. Mother further asserts that she now possesses "adequate housing and [the] financial ability to support her son[.]" *Id.* at 13.

"'Parental duties' are not defined in the Adoption Act." *In re Adoption of L.A.K.*, 265 A.3d 580, 592 (Pa. 2021). However,

> our courts long have interpreted parental duties in relation to the needs of a child, such as love, protection, guidance and support. Parental duties are carried out through affirmative actions that

- 8 -

develop and maintain the parent-child relationship. The roster of such positive actions undoubtedly includes communication and association. The performance of parental duties requires that a parent exert himself to take and maintain a place of importance in the child's life. Fortitude is required, as a parent must act with reasonable firmness to overcome obstacles that stand in the way of preserving a parent-child relationship and may not wait for a more suitable time to perform parental responsibilities.

*Id.* (citations and quotation marks omitted).

"When considering a request to terminate rights under [s]ection 2511(a)(1), a parent's failure or refusal to perform parental duties must be analyzed in relation to the particular circumstances of the case." *Id.* (citation and quotation marks omitted). "[T]he focus under [section] 2511(a)(1) is not the degree of success a parent may have had in reaching the child, but examines whether, under the circumstances, the parent has utilized all available resources to preserve the parent-child relationship." *C.M.*, 255 A.3d at 365.

Even where the evidence clearly establishes a parent has failed to perform affirmative parental duties for a period in excess of six months, the court must examine the individual circumstances and any explanation offered by the parent to determine if that evidence, in light of the totality of circumstances, clearly warrants permitting the involuntary termination of parental rights.

*Id.* at 364 (citation, brackets, and quotation marks omitted). Courts may "consider the whole history of a given case and not mechanically apply the six-month statutory provision, although it is the six months immediately preceding the filing of the petition that is most critical to the analysis." *Id.* at 365 (citation, brackets, and quotation marks omitted).

"In further consideration of the totality of circumstances, if competent evidence establishes the statutory criteria under [s]ubsection 2511(a)(1)," the court must then consider: "(1) the parent's explanation for his or her absence; (2) the post-abandonment contact between parent and child, including a parent's efforts to re-establish contact; and (3) consideration of the effect of termination of parental rights on the child pursuant to Subsection 2511(b)." *Id.* In considering a non-custodial parent's explanation, courts must determine "whether a parent has faced barriers that prevented the parent from maintaining the parent-child relationship." *L.A.K.*, 265 A.3d at 593. "What constitutes a 'barrier' in the context of a [s]ection 2511(a)(1) analysis is a finding within the discretion of the [orphans'] court, and what may constitute a barrier necessarily will vary with the circumstances of each case." *Id.* "[O]bstructive behavior by the child's custodian presents a barrier to the parent's ability to perform parental duties, which mitigates the parent's failure to maintain the parent-child relationship." *Id.*; *see also C.M.*, 255 A.3d at 365 ("[O]bstructive behavior on the part of the custodial parent aimed at thwarting the other parent's maintenance of a parental relationship will not be tolerated, and certainly will not provide a sound basis for the involuntary termination of parental rights.") (citation omitted).

The orphans' court provided the following explanation for its decision to terminate Mother's parental rights under section 2511(a)(1):

> The [orphans'] court asserts that all the evidence supports a
> finding by clear and convincing evidence that for a period of six

months prior to the filing of the petition Mother revealed a settled intent to relinquish [Child]. Even after being through dependency proceedings and being granted custody of [Child] in 2023, within four months' time she was surrendering [Child], living with different men in several different residences, and [Child] with [Petitioners]. The court finds that her actions speak louder than words in this instance. Her lack of effort and apparent prioritization of herself over the interests of her son reveal a settled purpose of relinquishing her [Child] and refusing or failing to perform her parental duties. For this reason, the [orphans'] court respectfully suggests the record supports [its] findings. To the extent that Mother suggests she was unduly prevented from engaging in these duties, the [orphans'] court must reiterate that she was given the express opportunity to exercise primary custody of her son. In a matter of months, she voluntarily relinquished him to [Petitioners]. There appears to be no efforts proven by Mother that the decision to give her son over to [Petitioners] was driven by any deceitful or devious act on their part. [Petitioners] did nothing surreptitious to take custody of [Child]. Instead, they exercised their lawful rights to secure greater custody rights when it became apparent to them that Mother was not interested in acting as the primary parent. When the trial court in the custody action provided Mother with three different options to exercise supervised custody, as the parties could agree, Mother elected to focus on communication difficulties with [S.M.,] but could not adequately explain why she [did not] exercise any of the other options. It is anticipated that there will be some obstacles to exercising parental rights for many natural parents, but they are expected to overcome obstacles that are not devious or meant to deceive. Here [Petitioners] lived in the same residence, had at least one known telephone number and a social media account all of which Mother could use to contact her son. She offered nothing to explain why she [did not] make any effort to exercise parental duties.

Orphans' Court Opinion, 6/20/2025, at 10-11 (citations omitted).

The record supports the orphans' court's findings. The record reflects that in September 2023, Mother voluntarily relinquished Child to Petitioners when she suddenly moved to York, Pennsylvania with her then-paramour, and had nowhere to live. N.T., 2/18/2025, at 23-27. The record further reflects

- 11 -

that after Mother returned Child to Petitioners' care in September 2023, she visited with him once—in October 2023—and that after Petitioners formally obtained custody of Child in January 2024, Mother made one attempt to arrange a visit with Child. *Id.* at 37-38. She made no attempts to arrange visitation in the six months immediately preceding the filing of the termination petition. *Id.* Additionally, R.M. testified that in the sixth months preceding the filing of the termination petition, Mother did not send Child any gifts, cards, or letters. *Id.* Likewise, in that time, Mother did not perform any parental duties for Child and Mother did not provide Child with any form of love, protection, emotional support, or guidance. *Id.* at 37. Mother provided Petitioners with one child support payment in July 2024, but is significantly in arrears with her support payments. *Id.* at 37-38.

Although Mother argues that Petitioners prevented her from performing any parental duties, the record belies this claim. While Mother and S.M. were unable to maintain a cordial relationship and open communication, according to R.M., there was nothing stopping Mother from contacting either him or ABC House to arrange visits with Child. *Id.* at 38-39, 69. We emphasize that the orphans' court found R.M.'s testimony credible and Mother's testimony not credible. *See* Orphans' Court Opinion, 6/20/2025, at 17; *see also C.M.*, 255 A.3d at 358-59.

Likewise, the record contains no indication that Mother performed or even attempted to perform parental duties for Child after she gave him to

Petitioners in September 2023. In the entirety of her own testimony, Mother offered no explanation, other than to blame Petitioners, for her failure to perform parental duties for Child in the sixth months preceding the termination petition. *See* N.T., 2/18/2025, at 78-109.

Based on the foregoing, our standard of review, and the trial court's credibility determinations, the evidence of record shows that Mother, for a period of at least six months immediately preceding the filing of the termination petition, has both evidenced a settled purpose of relinquishing her parental claim to Child and has refused and failed to perform parental duties. *See* 23 Pa.C.S. § 2511(a)(1); *see also L.A.K.*, 265 A.3d at 592. We therefore find no abuse of discretion in the orphans' court's finding that Petitioners presented clear and convincing evidence in support of termination pursuant to section 2511(a)(1).

We next consider whether the record supports the orphans' court's conclusion that there was clear and convincing evidence to terminate Mother's rights pursuant to section 2511(b). Section 2511(b) provides:

> The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S. § 2511(b).

Our analysis focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of

the child. ***T.S.M.***, 71 A.3d at 267. "[T]he determination of the child's needs and welfare requires consideration of the emotional bonds between the parent and child. The utmost attention should be paid to discerning the effect on the child of permanently severing the parental bond." ***Id.*** (quotation marks omitted). It is not enough that there exists a bond between parent and child to avoid termination. ***See Interest of K.T.***, 296 A.3d 1085, 1109 (Pa. 2023). Rather, the trial court must determine whether the bond is "necessary and beneficial" to the child, such that "maintaining the bond serves the child's developmental, physical, and emotional needs and welfare." ***Id.*** at 1105-06. Focusing upon the "child's development, and mental and emotional health," the trial court should assess whether severing the bond "is the kind of loss that would predictably cause extreme emotional consequences or significant, irreparable harm" to the child. ***Id.*** at 1110-11.

Additionally, our Supreme Court has explained that "the parental bond is but one part of the overall subsection (b) analysis[.]" ***Id.*** at 1113. The needs and welfare analysis must also include the consideration of factors such as: "the child's need for permanency and length of time in foster care …; whether the child is in a preadoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety, and stability." ***Id.*** (citations omitted). "These factors and others properly guide the court's analysis of the child's welfare and all [their] developmental,

physical, and emotional needs." *Id.* Importantly, "[orphans'] courts have the discretion to place appropriate weight on each factor present in the record before making a decision regarding termination that best serves the child's specific needs." *Id.*

Thus, a court must examine the matter from the child's perspective, placing his "developmental, physical, and emotional needs and welfare above concerns for the parent." *Id.* at 1105. Our Supreme Court has cautioned that "the law regarding termination of parental rights should not be applied mechanically but instead always with an eye to the best interests and the needs and welfare of the particular children involved." *T.S.M.*, 71 A.3d at 268-69. The party seeking termination bears the burden of proving, by clear and convincing evidence, that termination of parental rights serves a child's needs and welfare. *K.T.*, 296 A.3d at 1105.

With respect to its needs and welfare analysis, the orphans' court explained:

> The hearing transcript is replete with testimony as to the length of time [Child] has spent in [Petitioners'] home. It emphasizes his special needs and how [Petitioners] have addressed those and continue to do so with no assistance or help from Mother. The Adoption Study … on Page 4 … states, "They describe [Child] as a valued member of the household." On page 5 under the section title, "Motivation and Attitude Toward Adoption", the report reads, "The adoptive parents state that [Child] has adjusted very well and fits in perfectly as a family member and their son. They further stated that neither can imagine … life without [Child."]
>
> The court believes that applying the requirements of [s]ection 2511(b) to the evidence in the … transcript and the

- 15 -

adoption study[,] the best interest and welfare of [Child] will be served by the termination of [Mother's] parental rights and permit [Child] to have a stable and loving environment in Petitioners' household and having the only individuals he has truly known with any consistency become his parents ultimately through an adoption.

Orphans' Court Opinion, 6/20/2025, at 18-19.

Once again, the record supports the orphans' court's findings. The record reflects that Child, who is now six years old, has lived almost the entirety of his life with Petitioners. N.T., 2/18/2025, at 22-27. Child has attention deficit hyperactivity disorder and behavioral difficulties, requiring him to attend therapy twice per week. *Id.* Petitioners have been the only individuals that have ensured that Child attends his therapy sessions. *Id.* at 30-32, 68. Despite these issues, Child has responded well to treatment and the daily routines Petitioners have established for him. *Id.* at 30-31. S.M. testified that "[Child] is our family. We love him. He looks at our family as his family. He's happy. And he makes us happy." *Id.* at 71.

The lone challenge Mother makes with respect to the orphans' court's section 2511(b) determination is that the orphans' court failed to analyze the bond between Mother and Child and the effect of severing that bond. Mother's Brief at 13-14. Mother is correct that our Supreme Court has held that "if the child has any bond with the biological parent, the court must conduct an analysis of that bond[.]" *K.T.*, 296 A.3d at 1106. This Court has explained, however, that "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of

any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re Adoption of C.P.D.*, 324 A.3d 11, 27 (Pa. Super. 2024).

The record in the case at bar contains no evidence of a bond of any sort between Mother and Child. To the contrary, the record reveals that Child has lived almost the entirety of his life with Petitioners, that he only recognizes Petitioners as his mother and father, and that he calls Petitioners "mom" and "dad." N.T., 2/18/2025, at 22-27, 50. There is no indication in the record that he recognizes Mother or even knows that she is his biological mother, and the only evidence in the record of a bond is that which exists between Child and Petitioners. *See id.*; *see also* Petitioner's Exhibit A (Adoption Home Study). Although Mother baldly claimed that she had a bond with Child, she provided no examples of how any such bond exists, nor does anything in the record support this claim. *See* N.T., 2/18/2025, at 87-88. As there was no evidence of a bond between Child and Mother, we conclude that the orphans' court did not err in declining to conduct a bond analysis as to Mother. *See C.P.D.*, 324 A.3d at 27.

Based on the record before us and the standard of review we must employ, we discern no abuse of discretion in the orphans' court's conclusion that Child is bonded to Petitioners, that they best meet his needs and welfare, and that Child will not be irreparably harmed by terminating Mother's parental rights. *See K.T.*, 296 A.3d at 1113. Accordingly, we conclude that the

orphans' court did not err in determining that Children's developmental, emotional, and physical needs and welfare are best met by terminating Mother's parental rights.  As the orphans' court's determination pursuant to section 2511(b) is supported by the record, we must affirm the decree terminating Mother's parental rights to Child.  ***See C.M.***, 255 A.3d at 358-59.

Decree affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>9/29/2025</u>